## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAN BODEA, Individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| JPMORGAN CHASE & CO. and J.P. MORGAN SECURITIES LLC, | |
| Defendants | |

Plaintiff Dan Bodea ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action as a class action against defendants JPMorgan Chase & Co. ("JPMorgan Chase") and its subsidiary J.P. Morgan Securities LLC ("JPMS") (collectively "Defendants"). Plaintiff and the members of the proposed class were at all relevant times customers of Defendants, a diversified financial services firm, whose cash held in its customers' brokerage accounts was subject to Defendants' cash sweep program, as described below. Plaintiff alleges as follows against Defendants, based on personal knowledge as to Plaintiff and his own acts, and otherwise on information and belief, based on the investigations of his counsel, which included a review of documents created and distributed by Defendants, filings with the U.S. Securities and Exchange Commission ("SEC"), filings with the Federal Deposit Insurance Corporation ("FDIC"), and other publicly available commentary, analysis, and information. Upon information and belief, Plaintiff believes that discovery will further support the allegations in this class action complaint.

## I.    INTRODUCTION

1.    This case arises out of cash sweep programs implemented by Defendants whereby, acting as its customers' agent and fiduciary, defendant JPMS automatically "sweeps" uninvested cash balances in its customers' accounts and deposits that cash into a deposit account at its affiliated bank, JPMorgan Chase Bank N.A. ("JPMCB") (the "Bank Deposit Sweep Program" or "Program").

2.    Defendants implemented the Bank Deposit Sweep Program ostensibly to offer JPMS's customers an interest paying vehicle to hold cash that offers FDIC insurance on those cash deposits. Under the Program, customer cash is automatically "swept" from the customers' accounts, then allocated to accounts at JPMCB.

3.     In its agreement with its customers, JPMS specifically acknowledges that it acts as its customers' "***agent***" and thus its customers' fiduciary "with respect to all transactions relating to" the Bank Deposit Sweep Program. Under the broad scope of the agency, "all transactions relating to" the Program include the selection of the banks to participate in the Program; the selection of the type of accounts to which the Program applies; the selection of the type of bank accounts in which the JPMS customers' funds are swept; the negotiation and agreement as to the interest rates to be paid to JPMS customers under the Program; the negotiation and agreement as to any compensation or the foregoing of such compensation by JPMS for the benefit of either its customers or another entity, including JPMCB. JPMS's actions in designing, implementing, and operating the Bank Deposit Sweep Program to benefit itself at the expense of its customers constitutes a breach of the fiduciary duties that JPMS owes to its customers.

4.     While acting as its customers' agent, Defendant JPMS used the Bank Deposit Sweep Program to confer outsized benefits upon itself and its affiliates, including JPMorgan Chase and JPMCB, vis-à-vis its customers' cash by: (1) taking for itself and its affiliates the vast majority of the compensation earned from its customers' cash at the expense of its customers and principals, who receive only a minimal return on their cash deposits; and (2) concealing the benefits Defendants and its affiliates received from JPMS's principals' money, i.e. JPMS's customers for whom JPMS acted as an agent as to the Program, through the use of inaccurate, misleading, or oblique disclosures.

5.     JPMS also failed to adequately, if at all, disclose to its customers that, as to the Bank Deposit Sweep Program, it was an agent serving two masters – those being its customers and its affiliated companies, including JPMorgan Chase and JPMCB. Suffering from this conflict, Defendants shortchanged their customers for their and their affiliates' benefit by negotiating with

JPMCB one-sided transactions related to the Program, designed to shift compensation and returns on its customers' cash in the Program from those customers to JPMCB. Indeed, while acting as its customers' fiduciary agent, JPMS negotiated transactions whereby it shifted the compensation that broker-dealers like JPMS customarily receive from banks in connection with cash sweep programs to its affiliate, JPMCB, not to its fiduciary customers, whose agent it was in those transactions. JPMS failed to disclose and discuss these manifestly conflicted transactions, much less obtain informed consent from its customers and principals.

6.      Lastly, Defendants violated their duties to charge reasonable fees on the Program as required under their agreement with their customers, the industry standards, and their own conduct code, and indeed concealed those fees entirely from their customers by claiming that they did not charge any fees at all as to the Program, when in reality they forewent such fees in favor of their affiliated bank, JPMCB.

7.      Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals for breach of fiduciary duty, gross negligence, breach of contract, violation of New York's General Business Law § 349, and unjust enrichment to recover damages arising out of Defendants' violations of the law, and for such other relief as the Court may deem just and proper.

## II.      JURISDICTION AND VENUE

8.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1332(d)(2), as this action is brought as a class action on behalf of class members, one or more members of the class are citizens of a state different than the Defendants, and the amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.

9.      The Court has personal jurisdiction over Defendants because JPMorgan Chase maintains its principal place of business and headquarters in this District at 383 Madison Avenue,

New York, NY, regularly transacts business in New York through its wholly-owned subsidiaries, including defendant JPMS, and thus has minimum contacts in New York and in this District.

10.    Venue is proper under 28 U.S.C. § 1391 because among other things, Defendants maintain their headquarters in this District, have offices in this District, and a substantial part of the events, omissions, and/or relevant conduct by Defendants giving rise to Plaintiff's claims occurred in this District.

### III.    PARTIES

#### A. Plaintiff

11.    Plaintiff Dan Bodea was a customer of JPMS and is a resident and citizen of Illinois. Plaintiff maintained an account with JPMS in which cash was held over the course of the life of the account. While Plaintiff was a JPMS customer, the cash held in his account was automatically "swept" into a low interest-bearing bank account at JPMCB pursuant to the Bank Deposit Sweep Program.

#### B. Defendants

12.    Defendant JPMorgan Chase & Co. ("JPMorgan Chase") is a financial services firm based in the U.S. with operations worldwide. JPMorgan Chase is a holding company that conducts business through its subsidiaries including Defendant JPMS, and non-party JPMCB. JPMorgan Chase is a Delaware corporation with its headquarters in this District at 383 Madison Avenue, New York, NY.

13.    Defendant JP Morgan Securities LLC ("JPMS") is a Delaware limited liability company headquartered in this District in New York, NY. JPMS is a broker-dealer and investment advisor registered with the SEC. It is the wholly-owned and principal non-bank subsidiary of

JPMorgan Chase, through which JPMorgan Chase conducts securities, underwriting, dealing and brokerage activities in the U.S.

**C.  Relevant Non-Party**

14.     Non-party JPMorgan Chase Bank N.A. ("JPMCB") is JPMorgan Chase's principal bank subsidiary. It is a national banking association with U.S. branches in 48 states and Washington, D.C.

## IV.     FACTUAL BACKGROUND

**A.  JPMS's Customer Relationship**

15.     The relationship between JPMS and its customers, including Plaintiff, is set forth in JPMS's Brokerage Account Agreement and Disclosures (together, "JPMS Agreement"). The Agreement incorporates the "JPMorgan Chase Deposit Account", with the terms described in a document titled "The JPMorgan Chase Deposit Account" ("JPM Deposit Account Agreement"). The JPM Deposit Account Agreement provides that "[s]election of the Deposit Account for the sweep of available cash in your account will be deemed your acknowledgement and consent to the features and terms of the Deposit Account."

16.     The JPM Deposit Account Agreement established a fiduciary relationship between Defendants and the proposed class, stating that "JPMS acts as exclusive custodian and *agent* with respect to all transactions relating to the Deposit Account feature of customers' JPMS accounts."

17.     The JPM Deposit Account Agreement acknowledges that JPMS's customers not JPMS, are the owners of their funds on deposit with JPMCB.

18.     The JPMS Agreement expressly incorporates the rules of applicable federal, state, and self-regulatory organizations including the SEC and the Financial Industry Regulatory Authority ("FINRA").

19.    The JPMS Agreement contains a choice of law provision that provides, in relevant part, that these agreements and booklets shall be governed and enforced by the laws of the State of New York.

**B.  The Bank Deposit Sweep Program**

20.    The default Bank Deposit Sweep Program that Defendants offer their customers, including Plaintiff and the proposed class, is through the JP Morgan Chase Deposit Account.

21.    The JPMS Agreement sets forth how customers' uninvested cash is automatically "swept" from the customers' account into a deposit account with JPMCB.

22.    Importantly, according to the JPM Deposit Account Agreement, JPMCB – JPMS's affiliated bank – is the ***only option*** for the Bank Deposit Sweep Program.

23.    The JPMS Agreement provides that "[t]he interest rate paid on Deposit Account balances will vary based on business and economic conditions and is reset periodically at the discretion of Chase Bank."

**C.  JPMS Acted as a "Double Agent" Regarding the Bank Deposit Sweep Program**

24.    Pursuant to the JPM Deposit Account Agreement and the JPMS Agreement, JPMS acted as its customers' agent and exercised discretion with respect to the Program.

25.    The JPM Deposit Account Agreement and JPMS Agreement specifically provide that:

- "***JPMS acts as exclusive custodian and agent*** with respect to all transactions relating to the Deposit Account feature of customers' JPMS accounts."

- "***JPMS may change the products available as cash sweep options*** for J.P. Morgan Self-Directed Investing Accounts."

- "***At the discretion of JPMS***, you may be given additional cash sweep options, and you acknowledge that JPMS may change the available sweep option(s) or offer different options for different customers[.]"

6

26.    Accordingly, JPMS should have exercised its discretion to benefit its customers, whose agent it was as to the Program, but instead did so to benefit itself and its affiliates. At the same time JPMS was acting as its customers' agent in connection with the Bank Deposit Sweep Program, it was also beholden to its affiliate bank, JPMCB. Defendants acknowledge this conflict of interest in the Form ADV Part 2A – Wrap Fee Program Brochure ("Form ADV") prepared for their advisory customers but fail to either fully disclose the conflict or explain the ramifications, as required to obtain informed consent from their customers.

**D.  The Bank Deposit Sweep Program Benefits JPMS and Its Affiliates, Not Its Customers**

27.    The Bank Deposit Sweep Program primarily benefited JPMS and its affiliates at the expense of its customers.

28.    JPMS directed all accounts participating in the Bank Deposit Sweep Program to its affiliate bank JPMCB.

29.    The JPM Deposit Account Agreement explains, "JPMCB will receive a stable, cost-effective source of funding. JPMCB intends to use deposits made by customers who select the Deposit Account to fund current and new businesses, including lending activities and investments."

30.    The only disclosure regarding what JPMCB earns on its customers "swept" money consists of the reference to the "spread" between what JPMCB earns and what it pays out. The JPM Deposit Account Agreement states the following:

> The profitability on such lending activities and investments is generally measured by the difference, or "spread", between the interest rate paid on the deposits and other costs associated with the Deposit Account, and the interest rate and other income earned by JPMCB on the loans and investments made with the deposits.

31.     Thus, JPMS customers are not informed of the "interest rate and other income earned" by Defendants at the expense of its principals. More importantly, the "spread" referenced in that disclosure is not the typical bank "spread," but includes the substantial compensation or fees that banks would customarily pay to broker-dealers like JPMS in connection with their cash sweep programs, which compensation JPMS – while acting as its customers' agent vis-à-vis the Program – declined to retain or pass on to its fiduciary customers and instead shifted to JPMCB.

32.     JPMS exercises discretion, in its capacity as the agent of its customers, as to the Program and its key features, including the Program-related transactions by which it negotiates and establishes the rates of returns for its customers. As described above, JPMS enters into transactions by which it establishes and pays unreasonably low interest rates to its customers in the Program. In contrast to the unreasonable returns JPMS pays its customers, JPMS shifts to its affiliate JPMCB a substantial portion of the beneficial returns on its customers' cash that would otherwise constitute its customary compensation in connection with the Program.

33.     While JPMCB, acting as a bank vis-à-vis the JPMS customers' cash in the Program, is not a fiduciary of those customers and can establish whatever "spread" it could negotiate in arm's length transactions with its depositors, JPMS is a fiduciary of those customers, and in that capacity was required to put their customers' interests first – not JPMCB's – while negotiating and entering into transactions with JPMCB regarding the Program.

### E.  Defendants Act in Violation of Their Own Code of Conduct

34.     Defendants' Program – and the outsize benefits Defendants conferred upon themselves through their customers' cash – was all the more improper given the culture of fairness which Defendants claimed to perpetuate through the Code of Conduct (the "Code of Conduct"), applicable to "to the employees and directors of JPMorgan Chase & Co. … and its direct and

indirect subsidiaries."[1] The Code of Conduct, as stated by JPMorgan Chase Chief Executive Officer Jamie Dimon, "represents our shared obligation to operate with the highest level of integrity and ethical conduct."

35.    Section 1.1 of the Code of Conduct, which addresses "Our Ethics," states that "JPMorganChase is committed to ensuring employees act with honesty and integrity, *treat customers fairly*, and exercise sound judgment." (Emphasis added.)

36.    The tenet of fairness is embedded in Defendants' policy regarding compliance with applicable laws and Company policies:

> The financial industry is highly regulated. Being aware of and complying with the laws and regulations under which we operate is not just a critical part of our business, but *fundamental to who we are. It is important to comply with the letter, spirit, and intent of laws, regulations, and firm policies. Violating the law or engaging in unfair, deceptive, and abusive acts or practices may weaken customer confidence*, put our reputation at risk, impact market integrity, or result in regulator criticism, legal action, fines or penalties, or other negative repercussions.
>
> You are expected to know and comply with the laws, regulations and firm policies that apply to you. Always follow the Code.

(Emphasis added.)

37.    Likewise, the Code of Conduct guides Defendants and their employees as follows:

> *Always deal fairly and in good faith with our customers*, suppliers, competitors, business partners, regulators, and other employees. *Never take unfair advantage of anyone* through manipulation, concealment, abuse of privileged or confidential information, misrepresentation of material fact, *or any other unfair dealings or practices*.

(Emphasis added.)

---

[1] All references to the JPMorgan Chase Code of Conduct are to the document entitled "Our Code of Conduct 2024," available on JPMorgan's website: https://www.jpmorganchase.com/content/dam/jpmc/jpmorgan-chase-and-co/documents/code-of-conduct.pdf.

38.     Similarly, the Code of Conduct counsels that "[o]ur policies are designed to build honest business relationships and **_promote fairness_** in the marketplace," and thus employees must "[a]lways treat each other, and our **_customers_** and suppliers, respectfully and **_fairly_**." (Emphasis added.)

39.     Indeed, the Code of Conduct prescribes that Defendants avoid the conflict of interest presented by the Program, particularly in view of Defendants' fiduciary status vis-à-vis Plaintiff and the proposed class: "Our firm often has fiduciary obligations to our clients to act in their best interest, by which you should abide."

40.     As alleged herein, Defendants repeatedly and systematically violated their own Code of Conduct by and through the Program, which enriched Defendants at the expense of their customers.

**F. Defendants' Disclosures to Its Customers Regarding the Bank Deposit Sweep Program Contained Material Misrepresentations and Omissions**

41.     JPMS's disclosures contained a multitude of material misrepresentations and omissions that presented the terms and operation of the Bank Deposit Sweep Program inaccurately to Plaintiff and members of the proposed Class and prevented them from giving informed consent as to the Program and any conflicts of interests surrounding Defendants. For example, pursuant to the Form ADV, "[t]he interest rate on the Deposit Account **_may_** be higher or lower than yields on other available cash alternatives (e.g., money market mutual funds)." (Emphasis added). This statement is false and misleading because, as Defendants knew at the time, the interest rate on the cash sweep deposit account **_will_** be lower than yields on essentially any other available cash alternatives.

42.     Similarly, according to the JPMS Agreement, "the interest rate paid on Deposit Account balances **_may_** be higher or lower than the rate available to direct depositors of Chase Bank

for comparable accounts." This statement is false and misleading for the same reasons as the paragraph above. Specifically, direct depositors in JPMCB *will* receive higher interest rates.

43.    The JPMS account agreements and documents are completely silent regarding **non**-JPMCB interest rates for comparable accounts. Thereby, failing to disclose information that is plainly important to its customers.

44.    While remaining silent as to how much benefit JPMS and JPMCB actually receive, the JPMS Agreement provides an oblique and incomplete disclosure that "Chase Bank, JPMS and their affiliates will benefit financially from the Deposit Account."

45.    Defendants also fail to disclose the interest rates that the Program offer, instead only including a link to its website in the JPM Deposit Account Agreement.

46.    Additionally, Defendants disclosures contained additional misrepresentations and omissions of material facts about JPMCB's role in the Bank Deposit Sweep Program.

47.    According to the JPMS Agreement: "The interest rate paid on Deposit Account balances will vary based on business and economic conditions and is reset periodically at the discretion of [JPMCB]." The JPM Deposit Account Agreement contains a similar disclosure. These disclosures are misleading by claiming that the interest rates paid to customers is a function of business and economic conditions. In fact, the interest rates on the Program are significantly below market rates and are not reasonably tied to any business or economic condition.

48.    Defendants also fail to disclose that JPMS is using its discretion to negotiate and enter into transactions with JPMCB regarding the Program pursuant to which JPMS agrees to artificially low interest rates for its customers' cash in the Program to the benefit of JPMCB, then declines to charge the customary compensation for the Program and instead passes it to its affiliates rather than its own fiduciary customers.

49.     Unbeknownst to Defendants' customers in the Bank Deposit Sweep Program, their agent, JPMS, enabled JPMCB to function as a highly profitable arbitrage operation as to the JPMS customers' cash in the Program, taking advantage of the nearly free cash funneled to it by JPMS as agent of its customers pursuant to the Bank Deposit Sweep Program, and retaining for itself the vast majority of the profits it generates with that cash, including the customary compensation that JPMS shifted to JPMCB.

50.     Tellingly, JPMS's disclosures to its advisory customers regarding the Program contain material – although still insufficient – details about the "spread" that JPMS omits to disclose to its non-advisory customers, despite the fact that JPMS is a fiduciary agent to both types of customers as to the Program. Specifically, JPMS discloses to its advisory customers, the following when discussing the "spread":

> The income that JPMCB earns through its lending and investing activities is usually significantly greater than the interest earned by clients through the Deposit Account.

51.     Even these disclosures omit the actual proportions between the returns that JPMS allows JPMCB to retain on JPMS customers' cash in the Program pursuant to the negotiations and transactions between JPMS and JPMCB regarding the Program, and the returns that those customers receive, and also omit the fact that that JPMS is negotiating and entering into such transactions regarding the Program while conflicted and putting JPMCB's interest first, and lastly that JPMS foregoes substantial compensation in connection with the Program at the benefit of JPMCB instead of its fiduciary customers, whose agent it is vis-à-vis the Program.

## V.     CLASS ACTION ALLEGATIONS

52.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

53.     Plaintiff brings this action individually and as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class consisting of: All persons who held cash positions in accounts custodied by Defendants, and whose cash was subject to Defendants' Bank Deposit Sweep Program.

54.     Excluded from the Class are governmental entities, institutional and other non-retail investors; Defendants and any of its affiliates, legal representatives, employs, or officers; the judicial officer(s) and any judicial staff overseeing this litigation; and counsel for Plaintiff and the proposed Class, including other attorneys and staff at each respective firm.

55.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

56.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

**A.  Numerosity - Rule 23(a)(1)**

57.     Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time. However, Defendants oversee approximately $3.4 trillion in client assets through the work of thousands of financial advisors, and Plaintiff believes that the members of the proposed Class number in the thousands. Accordingly, Plaintiff and the Class satisfy the numerosity requirement of Rule 23. Class members may be notified of the pendency of this action by mail, published notice, or other appropriate methods.

**B.  Existence and Predominance of Common Questions of Law and Fact - Rule 23(a)(2), 23(b)(3)**

58.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following, whether:

a.     Defendants owed fiduciary duties to Plaintiff and the putative Class members in connection with the Bank Deposit Sweep Program;

b.     Defendants breached their duties to Plaintiff and the putative Class members in establishing, maintaining, and/or operating the Bank Deposit Sweep Program;

c.     Defendants' disclosures about the Bank Deposit Sweep Program contained material misrepresentations or omissions;

d.     Defendants breached their contract with Plaintiff and the putative Class members regarding the Bank Deposit Sweep Program;

e.     Defendants were unjustly enriched by their wrongful conduct;

f.     this case may be maintained as a class action under Fed. R. Civ. P. 23;

g.     and to what extent Class members are entitled to damages and other monetary relief; and

h.     and to what extent Class members are entitled to attorneys' fees and costs.

**C.  Typicality - Rule 23(a)(3)**

59.     Plaintiff's claims are typical of the claims of the Class because he was a customer of Defendants that had his cash balances improperly managed by JPMS through its administration of the Bank Deposit Sweep Program. Thus, Plaintiff's claims are typical of the claims of the

members of the Class as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class is common to the members of each.

### D.  Adequacy of Representation - Rule 23(a)(4)

60.     Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

### E.  Superiority - Rule 23(b)(3)

61.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them.

62.     Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

63.     Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**BREACH OF FIDUCIARY DUTY**
**(Asserted on behalf of the Plaintiff and the Class against Defendants)**

64.    Plaintiff repeats and incorporates by reference the preceding factual allegations as if fully set forth herein.

65.    At all relevant times, Defendants owed fiduciary duties to Plaintiff and the members of the Class in connection with the Bank Deposit Sweep Program. Such duties independently arose out of (1) the agency relationship between defendant JPMS, on one hand, and Plaintiff and the members of the Class on the other hand, as to the Bank Deposit Sweep Program; (2) Defendants holding and control over beneficial funds that belonged to its customers, related to their cash sweep balances; (3) Defendants' discretion as to the Bank Deposit Sweep Program and their customers' cash, while acting as their agent; and/or (4) the applicable industry standards. As a fiduciary to Plaintiff and the Class, Defendants owed them the highest duties of loyalty, candor, due care, and

prudence in as to the services they provided to them in connection with establishing, maintaining, and/or operating the Bank Deposit Sweep Program. Moreover, as a fiduciary, Defendants had a continuing duty to act exclusively for the benefit of Plaintiff and the Class in connection with establishing, maintaining, and/or operating the Program. Lastly, as a fiduciary, Defendants had a continuing duty to obtain *informed* consent from Plaintiff and the Class regarding the Bank Deposit Sweep Program, and specifically make sufficiently detailed disclosures regarding the Bank Deposit Sweep Program, their role, the role of various related parties, and any conflicts of interest to obtain such informed consent.

66.    Defendants further owed Plaintiff and the Class the fiduciary duty to act in good faith in connection with establishing, maintaining, and/or operating the Bank Deposit Sweep Program.

67.    Defendants further owed Plaintiff and the Class the duty to charge reasonable fees for their services related to the Bank Deposit Sweep Program.

68.    Plaintiff and the Class were fully dependent upon Defendants' ability, skill, knowledge, and goodwill with respect to Defendants' Bank Deposit Sweep Program.

69.    Defendants owed Plaintiff and the Class similar duties by virtue of their control over Defendants' policies or management regarding the Bank Deposit Sweep Program.

70.    Defendants breached their fiduciary duties by the conduct alleged herein, including by designing, structuring, and/or operating the Bank Deposit Sweep Program to benefit themselves at the expense of their fiduciary customers, making material misrepresentations and omissions regarding the Bank Deposit Sweep Program, violating its duty of care, and acting in their own – not their customers' – best interest vis-à-vis the Bank Deposit Sweep Program.

71.     Defendants violated their duty of loyalty by, among other things, putting their interest above that of their fiduciary customers, failing to provide sufficient information to their fiduciary customers regarding material features of the Bank Deposit Sweep Program to obtain *informed* consent from them, and not properly disclosing their own and their affiliates' role in, and conflicts of interest arising out of the Bank Deposit Sweep Program, as more fully shown above.

72.     As a direct and proximate consequence of Defendants' conduct as alleged herein, Plaintiff and the Class suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of Defendants, as well as all other equitable relief deemed just and proper.

**SECOND CAUSE OF ACTION**
**GROSS NEGLIGENCE**
**(Asserted on behalf of the Plaintiff and the Class against Defendants)**

73.     Plaintiff realleges and incorporates by reference the preceding factual allegations as if fully set forth herein.

74.     Defendants owed Plaintiff and the putative Class, all of whom were its fiduciary customers vis-à-vis the Bank Deposit Sweep Program, certain duties related to its establishment, maintenance, and operation of the Program.

75.     Those duties arose out of (1) the agency relationship between Defendant JPMS, on one hand, and Plaintiff and the members of the Class on the other hand, as to the Program; (2) Defendants' holding and control over beneficial funds that belonged to their customers, related to their cash sweep balances; and (3) the applicable industry standards.

76.     Defendants' duties to their customers included establishing, maintaining, and/or operating the Program for the benefit of their customers, not for its own benefit. Moreover,

Defendants had a duty to make sufficient disclosures to their customers regarding the Program as needed for those customers to give *informed* consent regarding the Program.

77.     Defendants owed Plaintiff and the Class similar duties by virtue of their control over Defendants' policies or management with regard to the Program.

78.     Defendants breached their duties by the conduct alleged herein, including by designing, structuring, and/or conducting transactions related to the Program to benefit themselves at the expense of their customers, making material misrepresentations and omissions regarding the Program, violating their duty of care, acting in their own – not their customers' – best interest vis-à-vis the Program.

79.     Defendants were not merely negligent; as more fully shown above, they were grossly negligent because their self-serving conduct showed the want of even scant care and/or was an extreme departure from the ordinary standard of conduct.

80.     Defendants' gross negligence directly and proximately caused harm to Plaintiff and the members of the proposed Class.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT (IN THE ALTERNATIVE)**
**(Asserted on behalf of the Plaintiff and the Class against Defendants)**

81.     Plaintiff realleges and incorporates by reference the preceding factual allegations as if fully set forth herein.

82.     In the alternative, Defendants have received and retained a benefit from Plaintiff and the members of the proposed Class, and inequity has resulted.

83.     Defendants benefited through their unjust conduct by sweeping available cash balances from their customers' accounts in the Program into bank accounts selected for the benefits

they offered to Defendants, not their customers, and retained most of the interest generated by those cash balances.

84.    Plaintiff alleges that it is inequitable for Defendants to retain these benefits.

85.    Plaintiff alleges that because of Defendants' conduct, the amount of their unjust enrichment should be disgorged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT (IN THE ALTERNATIVE)**
**(Asserted on behalf of the Plaintiff and the Class against Defendants)**

86.    Plaintiff repeats and realleges each of the factual allegations in the forgoing paragraphs as if fully set forth herein.

87.    Plaintiff asserts this cause of action for breach of contract in the alternative.

88.    Defendants' relationship with its customers is governed by a written contract, the terms of which are contained in, and incorporated into various standardized documents drafted by Defendants, including the JPMS Agreement and the JPM Deposit Account Agreement.

89.    The JPMS Agreement expressly incorporates the rules of applicable federal, state, and self-regulatory organizations including the SEC and FINRA.

90.    FINRA Rule 2122 expressly provides that "[c]harges, if any, for services performed . . . shall be reasonable and not unfairly discriminatory among customers."

91.    Pursuant to the JPM Deposit Account Agreement, defendant JPMS undertook to act as an agent of the customers with regard to all transactions relating to the Program and were thus contractually obligated to obtain for Plaintiff and members of the proposed Class, through such transactions, rates of return on their cash balances that are reasonable.

92.     As set forth herein, the rates of return paid to customers on their cash balances were not reasonable. Accordingly, Defendants breached their contracts with Plaintiff and the members of the proposed Class.

93.     Plaintiff and the members of the proposed Class were harmed by Defendants' breach.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW**
**GBS § 349 – DECEPTIVE ACTS AND PRACTICES UNLAWFUL**
**(Asserted on behalf of the Plaintiff and the Class against Defendants)**

94.     Plaintiff repeats and realleges each of the factual allegations in the forgoing paragraphs as if fully set forth herein.

95.     The agreement between the parties giving rise to this action was made in the State of New York, and Defendants selected the New York law as the law applicable to the agreement.

96.     In the state of New York, deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service are unlawful.

97.     The acts and practices of Defendants as alleged herein constitute "deceptive" business acts and practices under GBS § 349(a) as the conduct is misleading in a material way and that plaintiff and the Class have been injured by reason thereof.

98.     Plaintiff alleges that Defendants have, in the course of their business and the course of trade or commerce, undertaken and engaged in unfair business acts and practices under GBS § 349(a) by, among other things, engaging in transactions relating to the Program to generate substantial revenue for themselves with their customers' cash and beneficial returns on such cash, while paying their customers only a small fraction of those returns and concealing from such customers the portions of those customers' returns that they directed to and conferred upon their affiliates and the fact that those portions represented the vast majority of such interest. Defendants

have further engaged in material misrepresentations and omissions regarding key features of the Program.

99.    The deceptive business acts or practices described herein presented a threat and likelihood of harm and deception to Plaintiff and the Class in that Defendants has systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

100.    As a result of Defendants' misrepresentations and omissions of material facts concerning the Program, Plaintiff and the Class have suffered an ascertainable loss of money, property, and/or value and were harmed and suffered actual damages.

101.    Had Plaintiff and the Class been aware of the Defendants conduct with respect to the transactions relating to the Program, which greatly favored Defendants and their affiliates at their fiduciary customers' expense, Plaintiff and the Class would not have participated in those investment products or would have done so on different terms.

102.    The gravity of harm resulting from Defendants' unfair conduct outweighs any potential utility.

103.    The harm from Defendants' conduct was not reasonably avoidable by Plaintiff and the Class because only Defendants were aware of the true facts concerning the Program, and Defendants did not disclose these facts, or did not sufficiently disclose them.

104.    Plaintiff and the Class have suffered injury in fact and have lost money as a direct and proximate result of Defendants' business acts or practices. Monies lost by Plaintiff include, without limitation, the beneficial returns on cash positions from the Program that Defendants improperly withheld from Plaintiff's money as fees for itself, as set forth above.

105.    Through their unfair conduct, Defendants acquired money that Plaintiff and the Class was entitled to.

106.    Plaintiff and the Class accordingly seek appropriate relief under GBS § 349, including (a) in the alternative, restitution in full and disgorgement of all profits relating to the above-described unfair business acts or practices, and (b) such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair practices.

107.    Plaintiff and the Class also seek reasonable attorneys' fees and costs under applicable law, including GBS § 349(h).

## VII.    PRAYER FOR RELIEF

Plaintiff requests relief as follows:

1.    Actual damages;

2.    Punitive damages;

3.    Injunctive relief prohibiting Defendants from continuing to engage in the conduct alleged herein;

4.    Attorneys' fees and costs of suit;

5.    Prejudgment interest; and

6.    Such other relief as the Court deems just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

DATED: August 23, 2024                Respectfully submitted,

BERGER MONTAGUE PC

*/s/ Radha Nagamani Raghavan*
Radha Nagamani Raghavan (Bar No. 5753140)
Michael Dell'Angelo
(pro hac vice forthcoming)

Andrew D. Abramowitz
(pro hac vice forthcoming)
Alex B. Heller
(pro hac vice forthcoming)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
rraghavan@bm.net
mdellangelo@bm.net
aabramowitz@bm.net
aheller@bm.net

Alan L. Rosca, Esq. (OH 0084100)
(pro hac vice forthcoming)
Jonathan A. Korte, Esq. (FL 126450)
(pro hac vice forthcoming)
ROSCA SCARLATO LLC
2000 Auburn Dr. Suite 200
Beachwood, OH 44122
Telephone: (216) 946-7070
E-mail: arosca@rscounsel.law
 jkorte@rscounsel.law

Paul J. Scarlato, Esq. (PA 47155)
(pro hac vice forthcoming)
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Telephone: (216) 946-7070
E-mail: pscarlato@rscounsel.law

*Counsel for Plaintiff and the Proposed
Class*