**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMIE CANALES, *Individually and On Behalf of All Others Similarly Situated*, <br><br> Plaintiff, <br><br> v. <br><br> JP MORGAN CHASE & CO. and J.P. MORGAN SECURITIES LLC, <br><br> Defendants. | Case No. 1:2024-cv-08377-LGS |
| DAN BODEA, *Individually and On Behalf of All Others Similarly Situated*, <br><br> Plaintiff, <br><br> v. <br><br> JP MORGAN CHASE & CO. and J.P. MORGAN SECURITIES LLC, <br><br> Defendants. | Case No. 1:2024-cv-06404-LGS |

**PLAINTIFF CANALES' MOTION TO APPOINT ADAM A. SCHWARTZBAUM OF EDELSBERG LAW, P.A. AND JEFF OSTROW OF KOPELOWITZ OSTROW P.A. AS INTERIM CO-LEAD SUBCLASS COUNSEL**

In support of and as a supplement to Plaintiff Dan Bodea's Motion for Appointment of Interim Class Counsel [*Bodea* ECF No. 38] ("Bodea Motion") and Memorandum in Support of the Bodea Motion [*Bodea* ECF No. 39] ("Bodea Memo"), Plaintiff Canales respectfully moves pursuant to Federal Rule of Civil Procedure 23(g) to include the appointment of Adam A. Schwartzbaum of Edelsberg Law, P.A. ("Edelsberg Law") and Jeff Ostrow of Kopelowitz Ostrow P.A. ("Kopelowitz Ostrow"), as Interim Co-Lead Subclass Counsel for Retirement Accountholders.

## I.    INTRODUCTION

Messrs. Schwartzbaum and Ostrow are experienced class action lawyers that have devoted most of their careers litigating cases in the financial sector. Collectively, their law firms, Edelsberg Law and Kopelowitz Ostrow, have settled hundreds class actions against banks, insurance companies, and other financial institutions, recovering billions of dollars of past and prospective relief. Messrs. Schwartzbaum and Ostrow have been appointed class counsel in dozens of state and federal courts across the country, have achieved monumental settlements that have forced industry-wide practice changes, and have been recognized by both courts and their peers for their accomplishments. Both of their firms have appeared before this Court in cases in which they achieved excellent results for classes they represented.

This is a major lawsuit and Edelsberg Law's and Kopelowitz Ostrow's investigation of the claims provides a novel perspective that will bring value to class members. Messrs. Schwartzbaum and Ostrow appointments as Interim Co-Lead Subclass Counsel will ensure the interests of all putative class members with JP Morgan sweep accounts, including the Retirement Account Subclass that Plaintiff Canales represents, are fairly and adequately represented throughout the litigation.

JP Morgan is the largest financial institution in the United States and has held that ranking for many years. Plaintiff Canales agrees an interim leadership structure will aid the Court and benefit putative class members to efficiently litigate a case of this size and complexity and supports the appointment of Berger Montague PC ("BMPC") as Interim Class Counsel and Bernstein Litowitz Berger & Grossman LLP ("BLB&G") as Interim Local Counsel. All firms seeking leadership positions have investigated potential claims, possess significant experience in class actions and complex litigation, including against financial institutions, and have the requisite

knowledge and resources to represent the interests of the proposed classes. Although Plaintiff Canales' Counsel unsuccessfully sought to negotiate a leadership structure that would include separate leadership for the Retirement Account Subclass, they remain committed to working in a cooperative and efficient manner with BMPC and BLB&G to advance this litigation to benefit class members.

The Consolidated Action currently consists of two actions with two plaintiffs: *Bodea v. JP Morgan Chase & Co.*, No. 1:24-cv-06404-LGS, and *Lopez v. JPMorgan Chase & Co., et al.*, No. 24-cv-06489-LGS (S.D.N.Y.). These very similar complaints seek to certify a class consisting of "all persons who held cash positions in accounts custodied by Defendants, and whose cash as subject to Defendants' Bank Deposit Sweep Program" ("Brokerage Class"). *See Bodea* ECF No. 1 ¶ 53; *Lopez* ECF No. 1 ¶ 60. Conversely, the *Canales* complaint— which Plaintiff Canales agrees should be consolidated with the Consolidated Action—brings important focus to the subclass of JP Morgan retirement accounts ("Retirement Account Subclass" or "Subclass"). *See Canales* ECF No. 1 ¶ 74. The Subclass's cash sweep programs are governed by an express statutory requirement that brokerage firms pay a "reasonable rate of interest" on cash swept into deposit accounts at banks owned by those firms. *Id.* ¶¶ 43–48. Further, JP Morgan contractually acknowledges this requirement in some of its retirement account agreements. *Id.* ¶ 41–42. It is important that a leadership structure includes representation of different constituencies in cases in which the defendant may claim material conflicts exist between them. It would be mistaken to view this Retirement Account Subclass as "fully subsumed by *Bodea*." Bodea Memo at 9.

To safeguard these interests, Messrs. Schwartzbaum and Ostrow seek appointment as Interim Co-Lead Subclass Counsel for the Retirement Accountholders. In this role, Co-Lead Subclass Counsel will collegially work with BMPC to advance the common legal and factual

issues for all JP Morgan brokerage accountholders, and direct focus on advancing the Retirement Account Subclass's rights and interests. Together, Messrs. Schwartzbaum and Ostrow have the expertise, knowledge, and commitment necessary to fulfill these roles effectively. They will work cooperatively to advance this litigation and maximize outcomes for all affected consumers. Accordingly, Plaintiff Canales respectfully requests this Court grant both leadership applications and appoint BMPC as Interim Lead Counsel, BLB&G as Interim Local Counsel, and Adam A. Schwartzbaum of Edelsberg Law and Jeff Ostrow of Kopelowitz Ostrow as Interim Co-Lead Subclass Counsel.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is one of at least 32 related class action lawsuits pending in eight jurisdictions against one or more common defendant financial services companies, alleging the defendants breached their contractual and fiduciary duties to their customers by sweeping uninvested cash in their customers' brokerage and retirement accounts to deposit accounts held at affiliated banks that paid unreasonably low, below-market rates of interest, and violated consumer protection laws in the process. *See In re Cash Sweep Programs Contract Litig.*, MDL No. 03136 (J.P.M.L.), at ECF No. 3-1 (corrected schedule of actions), ECF No. 12 (notice of related action) (a motion to transfer pursuant to 28 U.S.C. § 1407 is pending and seeks the creation of an industry-wide MDL). For example, Plaintiff Canales alleges that, when acting as the customers' agents and fiduciaries, JP Morgan "sweeps" uninvested cash balances in its customers' retirement accounts and usually deposits that cash into accounts located at its affiliated bank. *See Canales* ECF No. 1 ¶ 2. Plaintiff Canales alleges Defendants breached their contractual and fiduciary duties when they placed their customers' cash in low interest-bearing accounts held by their own affiliates and then pocketed the unpaid interest as additional profit. *Id.* ¶¶ 6–7.

The Bodea Memo incorrectly implies the cash sweep lawsuits have only been pending for about a year and BMPC and BLB&G initially developed their claims and theories. *See* Bodea Memo at 3–6. The Bodea Memo omits that the cash sweep cases were first initiated by attorneys at a different law firm, Wolf Popper, over five years ago. The amended complaint in *Valelly v. Merril Lynch*, No. 1:19-cv-07998-VEC, ECF No. 1 (S.D.N.Y. Aug. 27, 2019), has been operative since February 5, 2021 (*id.* at ECF No. 5), alleging a class of Merrily Lynch brokerage accountholders and a subclass of retirement accountholders. Then, on December 11, 2023, Wolf Popper filed *McCrary v. Merril Lynch, Pierce, Fenner & Smith Incorporated*, No. 1:23-cv-10768-VM-BCM, ECF No. 1 (S.D.N.Y. Dec. 11, 2023). Plaintiff McCrary alleged his case is related to *Valelly*, and the "claims in that action were subject to a document discovery cut-off of October 15, 2021. The claims in this action are on behalf of investors whose claims accrued after that date." *Id.* ¶¶ 9–10. *McCrary* differs from *Valelly*, however, in only seeking to certify a class of retirement accountholders. *Id.* ¶ 196.[1]

In February 2024, Wolf Popper attorneys brought the third cash sweep complaint: *Burmin v. E\*Trade Secs. LLC and Morgan Stanley Smith Barney LLC*, No. 2:24-cv-00603-ES-MAH, ECF No. 1 (D.N.J. Feb. 1, 2024). As in *McCrary*, the *Burmin* complaint only alleges a class of persons who maintained "retirement accounts" with the defendants. *Id.*

Meanwhile, on July 1, 2024—five months after Wolf Popper attorneys filed the *Burmin* case, and almost five years after that firm filed *Valelly*—BMPC filed its first cash sweep complaint: *Peters v. LPL Financial LLC*, No. 3:24-cv-01228, ECF No. 1 (S.D. Cal. July 17, 2024). Unlike the more recent Wolf Popper complaints, however, *Peters* alleges a class of all brokerage

---

[1] The *Valelly* and *McCrary* dockets indicate extensive litigation. For example, in *Valelly*, experts have been qualified for both parties, and the court will soon decide summary judgment. *See Valelly*, No. 1:19-cv-07998-VEC, ECF Nos. 260, 263.

accountholders and asserts no subclass for retirement accountholders. *Id.* ¶ 42.

Since then, BMPC has brought cash sweep class actions against five additional groups of defendants—two in which it was the first to file (Charles Schwab and Wells Fargo)[2], and three in which it was not (Ameriprise, Raymond James, and UBS)[3]. In all six of its cases, BMPC only alleged classes of brokerage accountholders and *only* included retirement account subclasses when agreeing to consolidate their cases and collaborate with other plaintiffs' counsel in amended complaints.

For example, on June 14, 2024, three law firms (Simmons Hanly Conroy, William Dirks Dameron, and Oakes & Fosher) filed a cash sweep class action complaint against Morgan Stanley. *See Estate of Bernard J. Sherlip v. Morgan Stanley*, No. 1:24-cv-04571-VEC, ECF No. 1 (S.D.N.Y. June 6, 2014). The complaint asserts a brokerage class and an individual retirement account ("IRA") subclass. *Id.* ¶¶ 86–87. Then, in October 2024, an amended complaint was filed adding an additional plaintiff, BMPC and BLB&G as co-counsel, and retaining the IRA subclass. *Id.* at ECF No. 39 ¶¶ 136–37.

In another example, the same firms who filed *Estate of Bernard Sherlip* were the first to sue Ameriprise, alleging both a brokerage class and an IRA subclass. *See Mehlman v. Ameriprise Fin'l*, No. 2024-cv-03018, ECF No. 1 ¶¶ 95–96 (D. Minn. July 29, 2024). Afterwards, BMPC filed two similar complaints against Ameriprise, but only alleged brokerage classes in each. *See Frey*

---

[2] *See Bujold v. Wells Fargo & Co.*, No. 3:24-cv-04616-VC, ECF No. 1 (N.D. Cal. July 30, 2024), and *Loughran v. The Charles Schwab Corp.*, No. 2:24-cv-07344-DDP-E, ECF No. 1 (C.D. Cal. Aug. 28, 2024).

[3] *See Frey v. Ameriprise Fin'l*, No. 0:24-cv-03360-SRN-LIB, ECF No. 1 (D. Minn. Aug. 21, 2024); *Bender v. Ameriprise Fin'l*, No. 0:24-cv-03359-JRT-DLM, ECF No. 1 (D. Minn. Aug. 21, 2024); *Schmidlin v. Raymond James Fin'l Inc.*, No. 8:24-cv-02041, ECF No. 1 (M.D. Fla. Aug. 27, 2024); *Andrew v. UBS Fin'l Servs. Inc.*, No. 1:24-cv-06692, ECF No. 1 (S.D.N.Y. Sept. 30, 2024).

ECF No. 1 ¶ 56; *Bender* ECF No. 1 ¶ 44. Eventually, the plaintiffs agreed to consolidate all three cases and successfully filed an unopposed motion seeking to appoint *five* law firms as Co-Lead Counsel: Simmons Hanly Conroy, William Dirks Dameron, Oakes & Fosher, BMPC, and—appearing for the first time in the cash sweep litigation—BLB&G. *Mehlman* ECF No. 36; *see also* ECF No. 50 (granting motions). The filed consolidated amended complaint includes an "IRA and Advisory Subclass." *Id.* at ECF No. 58 ¶¶ 133–34.

The Wells Fargo cash sweep cases have a similar history. BMPC was the first to file a complaint excluding a retirement account subclass. *See Bujold* ECF No. 1. BLB&G filed their similar complaint—the fourth against Wells Fargo—almost two months later, alleging a retirement subclass. *See Cobb v. Wells Fargo & Co.*, No. 3:24-cv-06696, ECF No. 1 (N.D. Cal. Sept. 24, 2024).[4] Ultimately, after consolidation, BMPC and BLBG filed a pending joint leadership application. *In re Wells Fargo Cash Sweep Litig.*, No. 3:24-cv-04616-VC, ECF No. 39 (N.D. Cal. Sept. 30, 2024).[5]

Like Edelsberg Law and Kopelowitz Ostrow, BLB&G has never been the first to file a cash sweep complaint. BLB&G's cash sweep complaint against LPL Financial—the fourth filed against those defendants—only alleges a brokerage account class. *See White v. LPL Fin'l*, No. 3:24-cv-01724-TWR-AHG, ECF No. 1 ¶ 62 (S.D. Cal. Sept. 26, 2024). Its case against JP Morgan (which it filed second) is similar. *See Lopez*, ECF No. 1 ¶ 60. In other cases, however, when BLB&G was third to file cash sweep cases against Charles Schwab and Wells Fargo, it alleged

---

[4] As discussed below, this was after Edelsberg Law filed its first cash sweep case alleging a retirement account class.

[5] The UBS consolidated action, Charles Schwab consolidated action, and Raymond James consolidated action, have followed similar paths, with BMPC only alleging a retirement account subclass after being required to collaborate with plaintiffs alleging some classes in their (sometimes earlier filed) complaints.

retirement account subclasses. *See Davis v. Charles Schwab & Co.*, No. 2:24-cv-08410, ECF No. 1 ¶¶ 63–65 (C.D. Cal. Sept. 30, 2024); *Cobb v. Wells Fargo*, No. 3:24-cv-06696-VC, ECF No. 1 ¶¶ 71–73 (N.D. Cal. Sept. 24, 2024).

The chronology of the foregoing complaints demonstrates a few important facts. First, BMPC and BLB&G are well-aware of the differences between the Brokerage Class and Retirement Account Subclass (because they allege both in multiple complaints), yet consciously chose *not* to plead the Retirement Account Subclass in this case. Second, they always agree to include the Subclass when the issue is forced.  Most important, in many other cash sweep cases where BMPC and/or BLB&G seek leadership appointments (as Edelsberg Law and Kopelowitz Ostrow have reasonably done here), they strategically filed a subsequent class action, believing one or more additional plaintiffs' participation in the case will benefit the classes, and sought to join a leadership team.

Like other firms who studied the initial Merrill Lynch and Morgan Stanley cases brought by Wolf Popper, Edelsberg Law began investigating the cash sweep complaints in the summer of 2024 and brought Kopelowitz Ostrow into the fold. After studying the dockets in *Valelly* and *McCrary*, Messrs. Schwartzbaum and Ostrow concluded meritorious claims would exist for many similar cash sweep accounts operated in a manner that may subject additional brokerage firms to class wide liability. In anticipation of filing this case, Messrs. Schwartzbaum and Ostrow spent a substantial amount of time researching causes of action, reviewing documentation, and vetting potential plaintiffs.

On September 19, 2024, Edelsberg Law filed its first multi-count cash sweep case, *Canales*, in the Central District of California. Plaintiff Canales sued there for a national class of retirement accountholders, rather than all brokerage accountholders, and for a California Subclass

for violations of California's Unfair Competition Law ("UCL"). Edelsberg Law has also brought cash sweep lawsuits on behalf of retirement accountholders against Ameriprise, Wells Fargo, and Charles Schwab. *See Lourenco v. Ameriprise Fin'l, Inc.*, No. 2:24-cv-08825-MRA-KS (C.D. Cal.); *Morris v. Charles Schwab Corp.*, No. 2:24-cv-00985 (M.D. Fla.); *Chakravarthy v. Wells Fargo & Co.*, No. 2:24-cv-08831-FMO-BFM (C.D. Cal.)). Throughout this period, Kopelowitz Ostrow has been involved in the investigation and development of these cases, is co-counsel in the above cases against Wells Fargo and Ameriprise and is appearing in *Canales* subject to the Court's approval of Mr. Ostrow's pro hac vice admission.

The Bodea Memo accurately states the chronology of the lawsuits against JP Morgan, including the filing and consolidation of the *Bodea* and *Lopez* complaints, followed by the *Canales* complaint. Bodea Memo at 4–5. After the Bodea Motion was filed, the Court ordered that Plaintiff Bodea's "request for appointment of interim call counsel is held in abeyance pending the receipt of their letter regarding the status of consolidation discussions with plaintiff's counsel in the *Canales* action." *Bodea* ECF No. 45. Plaintiff Canales agreed to transfer his case to this Court shortly thereafter. *Canales* ECF No. 32. Following transfer, the Court adjourned Defendants' deadline to answer the complaint pending the schedule negotiated in the Consolidated Action. *Canales* ECF No. 38. The Court ordered the parties to "file either a stipulation of consolidation … or a joint letter stating the parties' respective positions concerning consolidation." *Id.*

The parties filed a joint letter with their respective positions on consolidation. *Canales* ECF No. 52. Plaintiff Canales agreed "that his case should be consolidated with the Consolidated Action, but respectfully request[ed] that his Counsel be permitted to file an application for leadership before Plaintiffs proceeds with a consolidated amended complaint or any other form of consolidated action." *Id.* Plaintiff Canales reasoned "that there are important differences" between

his and the Bodea/Lopez complaints because he only seeks to represent the Retirement Account Subclass, while Bodea and Lopez seek to certify a Brokerage Account Class. *Id.* He also requests his counsel be appointed "a leadership position alongside Plaintiff Bodea's Counsel so that they protect this very different sub-class and assure that their unique rights and interest are properly litigated." *Id.* Counsel for Bodea and Lopez opposed Plaintiff Canales' request to apply for a leadership appointment. *Id.* On November 18, 2024, the Court granted Plaintiff Canales' request to move for leadership, prompting this filing. *Id.*

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(g)(3) authorizes the appointment of interim class counsel, instructing that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). As explained in the Advisory Committee Notes accompanying the Rule, "in many cases the need to progress toward the certification determination" or to otherwise "protect the interests of the putative class" "may require designation of interim counsel." Fed. R. Civ. P. 23, Advisory Committee Notes. As set forth in the Manual for Complex Litigation (4th), § 21.11 ("Manual"), "appointment of interim counsel may be appropriate after consolidation of actions, to achieve efficiency and economy without jeopardizing fairness to the parties."

Although Rule 23(g)(3) is silent as to the standards for appointing interim counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *See In re Mun. Derivatives Antitrust Litig.,* 252 F.R.D. 184, 186 (S.D.N.Y. 2008). These factors include (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Moreover, under Rule 23(g)(4), lead class counsel "must fairly and adequately represent the interests of the class." Thus, in addition to the above factors, the Court thus may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

The "designation of interim class counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual* at § 21.11. "If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). "Best able" is often more than one lawyer and, quite frequently and depending on the size of the case and the number of putative classes, is a slate of lawyers. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (appointing four firms—one from each of the various applications—to serve as co-lead counsel). In appointing a class action leadership team, the Court should not only "ensure that the lawyers appointed to leadership positions are capable and experienced" but also "that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds." Duke Guidelines (Best Practice 3C).[6]

---

[6] *See* Bolch Judicial Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 33 (2d ed. 2018) ("Duke Guidelines"). Although the Guidelines specifically address multi-district litigation, they are informative in a case such as this one.

## IV.    ARGUMENT

### A.    Plaintiff Canales' Counsel's Investigation of the Potential Claims Against JP Morgan Supports the Appointment of Separate Leadership for the Retirement Account Subclass.

As discussed above, Plaintiff Canales' Counsel have performed substantial work investigating, pursuing and organizing the claims to date. As part of that investigation, they reviewed the *Bodea* and *Lopez* complaints and notably neither complaint alleges the named plaintiffs owned retirement accounts. Based on these facts, Messrs. Schwartzbaum and Ostrow concluded that they could add value to this litigation by asserting a complaint on behalf of retirement accountholders.

Specifically, although Edelsberg Law and Kopelowitz Ostrow could have asserted the same brokerage account class for Plaintiff Canales, as Plaintiffs Bodea and Lopez did, they chose to only assert claims on behalf of retirement accountholders because, based on their investigation, these claims have unique characteristics that should be carefully considered and have direct subclass representation. Doing so adds material value. As alleged in the *Canales* complaint, the Internal Revenue Code, Department of Treasury Regulations, and the ERISA statute each contain provisions which prohibit interested party transactions *with respect to retirement accounts* unless they bear a reasonable rate of interest. *Canales* ECF No. 1 ¶¶ 43–49. Additionally, Defendant JP Morgan Securities' Traditional IRA Custodial Agreement states with respect to sweep accounts that it will pay "a reasonable rate of interest" in accordance with these legal authorities. *Id.* ¶ 41. This provision not only binds JP Morgan to contractually pay a "reasonable rate of interest" to those retirement accountholders, but also shows Defendants' knowledge that it is unlawful to refuse to pay a reasonable rate of interest to retirement accountholders. *Id.* ¶ 42. By contrast, neither the *Bodea* nor *Lopez* complaint makes these important retirement account allegations. *See*

*generally Bodea* ECF No. 1; *Lopez* ECF No. 1. As noted above, such allegations were added to pleadings filed by BMPC and BLBG in other sweep account cases, with a retirement account subclass. Therefore, the Court should acknowledge Edelsberg Law's and Kopelowitz Ostrow's contribution to the investigation factor and expect a Retirement Account Subclass will be plead in the consolidated complaint against Defendants in this case.

Federal courts have long recognized that when members of a class may have differing claims, the class may need to be divided into subclasses "with separate representation to eliminate conflicting interests of counsel." *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 856 (1999). Appointing Messrs. Schwartzbaum and Ostrow as Interim Co-Lead Subclass Counsel will help leadership navigate and avoid any such potential conflicts, assuring that any eventual settlement carefully considers the relative strengths of the class and subclass claims. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016) (quoting *Ortiz*, 527 U.S. at 857) ("It is no answer to say ... that these conflicts may be ignored because the settlement makes no disparate allocation of resources as between the conflicting classes" for the "very decision to treat them all the same is itself an allocation decision with results almost certainly different from the results that [the disparate claimants] would have chosen.").

Should BMPC and BLB&G oppose this leadership application by arguing they can handle the subclassing themselves or that there is no interclass conflict, the Court should be careful to recognize that those firms have since alleged the retirement account subclass in other cases. Given the material differences between the current claims of the Brokerage Account Class and Retirement Account Subclass plead in the *Bodea/Lopez* and *Canales* complaints, respectively, the most prudent course is to enhance the leadership of this action by appointing counsel for a plaintiff who has expressly alleged his ownership of a JP Morgan retirement account with a sweep account

to assure any potential conflict is ameliorated and to guarantee the highest levels of representation for every class member. *See, e.g., In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 439 (S.D.N.Y. 2019) (Schofield, J.) (refusing to certify a class for lack of adequate representation on account of intraclass conflict). Right now, there are only two plaintiffs in the Consolidated Action against the nation's largest financial institution, and there are numerous JP Morgan retirement and brokerage account types, all of which were subject to JP Morgan's common misconduct of not paying the required reasonable rate of interest. As BMPC's and BLB&G's clients have requested in cases where they were not the first to file, Plaintiff Canales reasonably requests the inclusion that his chosen counsel in leadership positions who are willing to work with counsel for Bodea and Lopez.

The Court should also reject the unproductive finger pointing accusing Plaintiff Canales' Counsel of filing "copycat complaints" to "bypass already established leadership processes" in pending cases and arguing that this conduct has made it "untenable to work alongside each other." *Canales* ECF No. 52. As shown above, Plaintiff Canales did not file a "copycat complaint," but instead developed his own complaint focused on the Retirement Account Subclass. Further, BMPC and BLB&G are not the first firms to develop the sweep account theory of liability. They too have filed subsequent cases against other defendants and joined with other firms to lead those cases as interim class counsel, just like Edelsberg Law and Kopelowitz Ostrow reasonably request here: BMPC filed subsequent cases in half of their cash sweep portfolio, and BLB&G has never been first to file. BLB&G's strategy did not make it "untenable" for them to work with BMPC and other firms, so Edelsberg Law and Kopelowitz Ostrow's similar strategy should not make it "untenable" for these fine law firms to work with Messrs. Schwartzbaum and Ostrow either. Despite the other firms' unwillingness to agree to do so, Messrs. Schwartzbaum and Ostrow are confident that, once

leadership is appointed that includes all four firms, they will work collaboratively and efficiently together for the benefit of the Brokerage Account Class and the Retirement Account Subclass—just as BMPC and BLB&G agreed to work with three other Co-Lead Counsel in the Ameriprise consolidated action.

As Co-Lead Subclass Counsel for the Retirement Account Subclass, Messrs. Schwartzbaum and Ostrow will ensure the representative parties and their counsel will "fairly and adequately protect the interests" of the subclass. Fed. R. Civ. P. 23(a)(4). In this role, Messrs. Schwartzbaum and Ostrow will represent and protect the Subclass's potentially diverging or conflicting interests; develop tailored strategies to maximize outcomes for the Subclass' strong claims; balance the demands of the Subclass against the priorities of the Brokerage Account Class; and execute litigation tactics that directly advance the Subclass's interests without compromising the Brokerage Account Class claims.

**B. Plaintiff Canales' Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.**

As demonstrated below, Edelsberg Law and Kopelowitz Ostrow have the experience, knowledge, and commitment to this important sweep account litigation to be effective in their proposed roles. *See* Firm Resumes, attached as **Exhibits A–B**. Their firms have had great success prosecuting class actions together for years and take pride in compelling industry practice changes while also recovering past losses for class members.

**1. Adam A. Schwartzbaum**

Edelsberg Law is a growing class action law firm that, since its founding in 2019, has distinguished itself in the successful litigation and settlement of hundreds of class actions across the country. Edelsberg Law attorneys have served in important leadership positions in cases that provide relevant experience for the leadership of this case.

Edelsberg Law partner Adam A. Schwartzbaum has been involved in the leadership of several multidistrict litigations and other large, complex matters. As partner to co-lead counsel in the *In re Champlain Towers South Collapse Litigation*, No. 2021-015089-CA-01 (Fla. 11th Jud. Cir.), Mr. Schwartzbaum was deeply involved in many important aspects of that historic and shocking building collapse litigation, including leading a process for evaluating and submitting over 80 individual claims for class member damages. Additionally, Mr. Schwartzbaum was a member of the team that handled the motions for class certification and summary judgment in *In re FieldTurf Artificial Turf Marketing & Sales Practice Litigation*, No. 3:17-md-2779 (MAS) (TJB) (D.N.J.), a multi-district litigation which recently settled after the district court granted plaintiffs' motion for certification of an issue class. As partner to co-lead counsel in *In re Erie Covid-19 Business Interruption Protection Insurance Litigation*, No. 1:21-mc-00001 (W.D. Pa.), Mr. Schwartzbaum worked closely with all members of the steering committee to advance that multidistrict for many years.

Mr. Schwartzbaum has been appointed class counsel in many class actions, including cases where he obtained class certification prior to settlement, and brings a wealth of trial and appellate court experience on both the plaintiff and defense sides. Further, as a partner at Edelsberg Law, Mr. Schwartzbaum has deep experience successfully litigating portfolios of cases with similar theories against different defendants across the country also bears directly on the cash sweep cases. For example, in its portfolio of cases against Progressive and State Farm concerning the underpayment of actual cash value ("ACV") on total loss vehicles using a negotiation adjustment, Edelsberg Law has obtained orders granting class certification in twelve state and federal courts and recently obtained preliminary approval of a $48 million settlement of one such case in this Court: *Volino v. Progressive Casualty Insurance Co.*, No. 1:21-cv-06243-LGS (S.D.N.Y.)*.* In addition to providing

key assistance on the entire Progressive portfolio, Mr. Schwartzbaum has also been lead counsel and settled similar class actions against American Family Insurance and The Hartford Insurance that gave every class member an opportunity to get back their full damages and reformed the insurance companies' business practices.

Relatedly, Edelsberg Law settled over thirty class actions on a class wide basis in its portfolio concerning unpaid sales tax and fees on total loss vehicles—and, importantly, reformed the way insurance companies operate across the country. Mr. Schwartzbaum was lead counsel in many such cases and recently secured large settlements and important business practice changes in cases against Allstate Insurance, Imperial Fire, and Nebraska Farm Bureau. While most of Edelsberg Law's ACV cases have been successful, they have also not hesitated to appeal when lower courts have erred. For example, Mr. Schwartzbaum recently helped lead a team to obtain a reversal of an order dismissing such a case in the Missouri Supreme Court. *See Bell v. Shelter Gen. Ins. Co.*, No. SC100461 (Mo.).

### 2. Jeff Ostrow

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from law school in 1997 and has since grown it to 25 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow has been appointed as lead counsel in many MDL and other high profile class

actions. Most material to this Motion is that the successful prosecution of cases against financial institutions that violate their account agreements with consumers has been a central focus at Kopelowitz Ostrow *since 2010*, recovering hundreds of millions of dollars. In this Court, Kopelowitz Ostrow was a lead counsel in *Roberts v. Capital One*, No. 16 Civ. 4841 (LGS) (S.D.N.Y.) (Schofield, J.), a hard fought, four and a half year banking class action that resulted in a significant class settlement, following an appeal to the Second Circuit, completion of discovery, denial of competing summary judgment motions, and while the class certification motion was pending. Others successful cases against financial institutions in this Circuit include *McNeil v. Capital One Bank, N.A.*, No. 19-cv-00473-FB-RER (E.D.N.Y.); *Lashambae v. Capital One Bank, N.A.*, No. 1:17 Civ. 06406 (FB) (VMS) (E.D.N.Y.); *Perks v. TD Bank, N.A.*, No. 1:18cv11176 (S.D.N.Y.); *Roy v. ESL Fed. Cred. Union*, No. 19-CV-6122 (W.D.N.Y.); *Thompson, et al. v. Community Bank, N.A.*, No. 8:19-CV-00919 (N.D.N.Y.). Another example of Kopelowitz Ostrow's banking cases before this Court is the pending one challenging Bank of America's failure to pay interest on mortgage escrow accounts. In that case, the U.S. Supreme Court recently reversed the Second Circuit's dismissal of that case on preemption grounds, after the motion to dismiss had been denied. *See Cantero, et al. v. Bank of America, N.A.*, 18-CV-2352 (RRM) (ARL), 18-CV-4157 (RRM) (ARL), 2020 WL 9174972 (S.D.N.Y. Sept. 29, 2020), *reversed by* 49 F.4th 121 (2d Cir. 2022), *reversed and remanded in* 602 U.S. 205 (2024).

Mr. Ostrow and his partners have served as Coordinating Counsel, Settlement Class Counsel, and Class Counsel for the MDL and for individual cases in *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.), perhaps the largest banking MDL to date that resulted in the recovery of over a billion dollars from the nation's largest banks. Through that MDL and the dozens of successful class actions against banks and credit unions throughout the United States,

Kopelowitz Ostrow has been at the forefront of correcting wrongs and forcing industry practice changes. Numerous financial institutions sued by Kopelowitz Ostrow's clients eliminated their overdraft fee and insufficient funds fee policies either as part of the settlement or in response to the class actions.

Outside of banking cases, notable examples of Kopelowitz Ostrow's class action leadership and successes are *In re Disposable Contact Lens Antitrust Litigation,* No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date, and as counsel for numerous large Florida county and municipal government agencies in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was class counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug.

2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc*., No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84, at 14.

**C. Proposed Interim Class Counsel Is Willing and Able to Commit the Necessary Resources Required to Adequately Represent Class Members.**

The resources Messrs. Schwartzbaum and Ostrow have already and will continue to commit to the case also strongly support their appointments as Interim Co-Lead Subclass Counsel. The firms will self-fund this litigation, as they always do. Their resources are not merely financial, but also include substantial expertise, which will benefit Plaintiffs and the putative classes. Further, Messrs. Schwartzbaum and Ostrow understand the time, energy, and skill necessary to lead this litigation, and have committed the resources required to ensure the effective and efficient representation of the putative classes. Because they have filed other cash sweep cases, they are committed to success for victimized accountholders, while forcing important industry changes. Messrs. Schwartzbaum and Ostrow can, as needed, draw upon the skills and talents of experienced attorneys and staff members at their firms, along with their local counsel Andrew J. Shamis of Shamis & Gentile. As counsels' experience indicates, Messrs. Schwartzbaum and Ostrow have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed, Messrs. Schwartzbaum and Ostrow will continue to commit the same resources and effort to this case as their firms have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently with Lead Counsel and Local Counsel from BMPC and BLB&G for the benefit of the class.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff Canales respectfully requests the Court enter an order appointing BMPC as Lead Counsel, BLB&G as Local Counsel, and Messrs. Schwartzbaum and Ostrow as Co-Lead Subclass Counsel for the Retirement Account Subclass. If the Court is inclined to only appoint one attorney as Co-Lead Counsel for the Subclass, then Plaintiff Canales alternatively requests the Court appoint Mr. Schwartzbaum to that position.

Dated: November 26, 2024                              Respectfully submitted,

                                                       */s/ Andrew J. Shamis*

                                                       Andrew J. Shamis
                                                       N.Y. Bar No. 5195185
                                                       **SHAMIS & GENTILE, P.A.**
                                                       14 N.E. 1st Avenue, Suite 705
                                                       Miami, FL 33132
                                                       ashamis@shamisgentile.com
                                                       305-479032299

                                                       **EDELSBERG LAW, P.A.**
                                                       Scott Edelsberg, Esq.*
                                                       scott@edelsberglaw.com
                                                       Adam A. Schwartzbaum, Esq.*
                                                       adam@edelsberglaw.com
                                                       20900 NE 30th Ave., Suite 417
                                                       Aventura, FL 33180

                                                       Jeff Ostrow*
                                                       **KOPELOWITZ OSTROW FERGUSON
                                                       WEISELBERG GILBERT**
                                                       One West Las Olas Blvd., Suite 500
                                                       Fort Lauderdale, Florida 33301
                                                       Tel: (954) 525-4100
                                                       ostrow@kolawyers.com

                                                       **Pro Hac Vice* Application pending

                                                       *Counsel for Plaintiff Canales and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on November 26, 2024, he caused a true and correct copy of the foregoing **Plaintiff Canales' Motion to Appoint Adam A. Schwartzbaum of Edelsberg Law, P.A. and Jeff Ostrow of Kopelowitz Ostrow P.A. as Interim Co-Lead Subclass** Counsel to be filed electronically. Notice of this filing will be sent to all parties registered on this Court's ECG system by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Andrew Shamis*
Andrew Shamis