**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| *In re JP Morgan Chase Cash Sweep Program* |

Case No. 24-cv-06404-LGS

**PLAINTIFF DAN BODEA'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF CANALES' MOTION TO APPOINT ADAM A. SCHWARTZBAUM OF
EDELSBERG LAW, P.A. AND JEFF OSTROW OF KOPELOWITZ OSTROW P.A.
<u>AS INTERIM CO-LEAD SUBCLASS COUNSEL</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY ..................................................... 3

      A.    BMPC and Sweeps Counsel Begin Litigation Encompassing
            All Accounts Subject to JPMorgan's Cash Sweep Programs,
            Including Retirement Accounts..............................................................3

      B.    Canales' Counsel File A Late, Duplicative Complaint and
            Take Other Actions That Multiply Expense and Cause Delay
            to the Class ............................................................................................4

      C.    Canales' Counsel's Tactics Here Exemplify a Larger Pattern ...............6

III.  LEGAL STANDARD ........................................................................................ 8

IV.   ARGUMENT ..................................................................................................... 8

      A.    There is No Need For Separate Subclass Counsel.................................9

      B.    Coordination With Canales' Counsel Is Untenable...............................13

      C.    Proposed Interim Class Counsel Has Expended Significant Time
            and Resources to Investigate the Class's Claims Without
            Subclass Counsel ................................................................................15

      D.    Proposed Interim Class Counsel is Committed to Utilizing their
            Incomparable Resources to Adequately Represent the Class ...............17

V.    CONCLUSION................................................................................................ 20

## TABLE OF AUTHORITIES

CASES                                                                 PAGE(S)

*Buonasera v. Honest Co., Inc.*,
   318 F.R.D. 17 (S.D.N.Y 2016) .................................................................................9

*In re Bystolic Antitrust Litig.*,
   2020 WL 6700830 (S.D.N.Y. Nov. 12, 2020) .........................................................17

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013)....................................................................................12

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   407 F. Supp. 3d 422 (S.D.N.Y. 2019).................................................................9, 14

*In re Gold Fixing Antitrust Litig.*,
   2014 WL 12993488 (S.D.N.Y. June 16, 2014) ......................................................13

*La. Health Serv. & Indemnity Co. v. Janssen Biotech Inc.*,
   2021 WL 486895 (D.N.J. Feb. 10, 2021) ...............................................................16

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011)................................................................................9, 12

*Ortiz v. Fibreboard Corporation*,
   527 U.S. 815 (1999)................................................................................................13

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
   827 F.3d 223 (2d Cir. 2016)....................................................................................13

*In re Treasury Securities Auction Antitrust Litig.*,
   2017 WL 10991411 (S.D.N.Y. Aug 23, 2017)..................................................13, 17

OTHER AUTHORITIES

Fed. R. Civ. P. 23 .................................................................................................1, 9

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ...................................................15

Plaintiff Dan Bodea ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion by Plaintiff Jamie Canales ("Canales") seeking appointment of Adam A. Schwartzbaum of Edelsberg Law P.A. ("Edelsberg Law") and Jeff Ostrow of Kopelowitz Ostrow P.A. ("Kopelowitz Ostrow") as "Interim Co-Lead Subclass Counsel for Retirement Accountholders" (ECF No. 53, "Canales Motion") and in further support of Plaintiff's motion to appoint Berger Montague PC ("BMPC") as Interim Class Counsel pursuant to Fed. R. Civ P. 23(g) and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Local Counsel in the above-captioned consolidated action (the "Action") against JPMorgan Chase & Co. and J.P. Morgan Securities LLC (together, "JPMorgan").  ECF No. 39 ("Bodea Motion").[1]

## I.    INTRODUCTION

Plaintiff respectfully submits that the Court should appoint BMPC as Interim Class Counsel and BLB&G as Local Counsel because they are eminently qualified under Rule 23(g) and their appointment will serve the best interests of the Class. Under each of the Rule 23(g) factors— (i) the firms' work in identifying and investigating the claims asserted here, (ii) their experience prosecuting complex financial cases like this one, (iii) their knowledge of the applicable law, and (iv) the resources they will bring to the prosecution of this case—BMPC and BLB&G are far and away the "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

There is no need for JPMorgan retirement accountholders to be represented by separate

---

[1] Unless otherwise indicated, all internal citations are omitted and emphasis is added. As set forth in the accompanying Supplemental Joint Declaration of Michael Dell'Angelo and John Rizio-Hamilton (the "Supplemental Declaration" or "Supp. Decl."), in addition to the firms seeking appointment here, this opposition is joined by each of the other law firms representing Plaintiff Bodea in this action, Simmons Hanley Conroy LLP, Williams Dirks Dameron LLC, and Rosca Scarlato LLC (collectively with BMPC and BLB&G, "Sweeps Counsel"). References to (i) "¶" are to the Class Action Complaint (ECF No. 1); and (ii) "Ex. __" or "Joint Decl. Ex. __" are to the exhibits to the Joint Declaration (ECF No. 40).

subclass counsel. Plaintiff Bodea, who had both a JPMorgan non-retirement brokerage account and an individual retirement account ("IRA") account (Supp. Decl. at ¶8), has already alleged a proposed class of "[a]ll persons who held cash positions in accounts custodied by Defendants, and whose cash was subject to Defendants' Bank Deposit Sweep Program." ¶53. This proposed class includes all JPMorgan clients that held general brokerage accounts and/or retirement accounts whose cash was subject to JPMorgan's cash sweep bank programs ("Cash Sweep Programs" or "Programs").

Canales explicitly **_supports_** appointment of BMPC as Interim Class Counsel and BLB&G as Local Counsel. However, he further claims that his request for appointment of Edelsberg Law and Kopelowitz Ostrow (together, "Canales' Counsel") as subclass counsel for retirement accountholders would be a helpful "supplement" to BMPC's and BLB&G's appointment. Canales Motion at 1. This is wrong. The appointment of Canales' Counsel will only harm the proposed class, delay the efficient resolution of the Action, and make litigation of this case impractical. Demonstrating that they are not suitable to represent JPMorgan customers here, Canales' Counsel asserts erroneous and meritless arguments while omitting discussion of their actions in this case and in similar cases around the country.

By contrast, BMPC and BLB&G are ideally suited to represent the **_entire_** proposed class. They have unparalleled success and experience in prosecuting the same kinds of claims asserted here, in large complex class actions against sophisticated financial institutions like (and including) JPMorgan. Supp. Decl. at ¶¶4-5. Moreover, BMPC and BLB&G have the resources and commitment required to vigorously prosecute these claims without the need of additional counsel to represent a retirement accountholder subclass. Canales' Counsel's effort to force their way into this Action does not benefit the proposed class and should be rejected.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     BMPC and Sweeps Counsel Begin Litigation Encompassing All Accounts Subject to JPMorgan's Cash Sweep Programs, Including Retirement Accounts

Plaintiff Bodea, represented by BMPC, filed the first complaint against JPMorgan on August 23, 2024, bringing claims on behalf of *all* persons who held cash positions in *all* accounts custodied by JPMorgan and were subject to JPMorgan's Cash Sweep Programs. ¶53. Five days later, on August 28, 2024, Kenneth Lopez, represented by Nussbaum Law Group, P.C. ("Nussbaum"), filed a complaint in this District. *See Lopez v. JPMorgan Chase & Co.*, No. 24-cv-06489-LGS (S.D.N.Y.), ECF No. 1.  On October 8, 2024, the Court consolidated *Lopez* into *Bodea*. *Lopez*, ECF No. 22 at 2.[2]

The *Bodea* Complaint contains detailed allegations that were the result of an in-depth investigation. BMPC has continued its investigation and is working closely with former SEC Commissioner Robert J. Jackson, Jr., who was responsible for the governing SEC rule concerning broker-dealers' obligations to act in the best interests of their retail customers, as well as with his former SEC colleague, Professor Edwin Hu of the University of Virginia School of Law. Supp. Decl. at ¶3. They are part of the first-rate team that Sweeps Counsel has assembled to prosecute these claims. *Id.* With their assistance, BMPC has acquired and analyzed a proprietary dataset of historic interest rates to demonstrate that the rates JPMorgan paid to Program clients were unreasonable.

Moreover, BMPC is currently working together with BLB&G and Sweeps Counsel to prosecute similar claims across the country and has gained valuable insights into other brokerages'

---

[2] Canales repeatedly and erroneously states or suggests that *Lopez* was filed by BLB&G. *See, e.g.*, Motion at 7 ("Its case against JP Morgan (which it filed second) . . ."). *Lopez* was filed by Nussbaum, which did not file any leadership motion and supported BMPC and BLB&G's appointment. ECF No. 55 at 1.

operations of similar cash sweep programs in those cases. For example, BMPC and BLB&G recently filed detailed amended complaints in actions against Morgan Stanley and UBS in this District concerning their cash sweep programs, as well as Ameriprise in the District of Minnesota.[3] BMPC and BLB&G are also working together to prosecute cash sweep-related cases against Wells Fargo, Charles Schwab, and other financial institutions. Supp. Decl. at ¶4. In recognition of their qualifications to prosecute claims just like those asserted against JPMorgan here, Sweeps Counsel firms, including BMPC and BLB&G, have been recently appointed as interim class counsel in five other class actions alleging similar misconduct against Ameriprise, UBS, LPL Financial, Charles Schwab, and Raymond James. *Id.*[4]

### B. Canales' Counsel File A Late, Duplicative Complaint and Take Other Actions That Multiply Expense and Cause Delay to the Class

In sharp contrast to the leadership role played by BMPC and BLB&G, Plaintiff Canales and his counsel, Edelsberg Law and Kopelowitz Ostrow, have pursued a course that has directly undermined the interests of cash sweeps customers and the efficient prosecution of this case. After two other cases had already been filed against JPMorgan in this District (*Bodea* and *Lopez*), Canales' Counsel filed a third nationwide class action complaint in the Central District of California, where JPMorgan is neither incorporated nor where its principal place of business is

---

[3] *See Sherlip v. Morgan Stanley*, No. 24-cv-4571 (S.D.N.Y. Oct. 10, 2024) (ECF No. 40); *Goldsmith v. UBS Financial Services Inc.*, No. 24-cv-06354 (S.D.N.Y. Dec. 3, 2024) (ECF No. 34); *Mehlman v. Ameriprise Financial Inc.*, No. 24-cv-3018 (JRT/DLM) (D. Minn. Nov. 3, 2024) (ECF No. 58). Supp. Decl. Exs. F and G; Joint Decl. Ex. F.

[4] Canales attempts to discount Sweeps Counsel's considerable efforts to pursue relief against multiple financial institutions across the country by suggesting that the recent series of important cash sweeps cases actually began with a single case filed five years ago against Merrill Lynch. Canales Motion at 5 (citing *Valelly v. Merrill Lynch*, No. 19-cv-07998-VEC). However, the overlap between *Valelly* and the numerous cash sweeps cases filed in 2024 is limited **at best**, as the recent cases assert different theories of why the financial institutions' conduct constitutes breach of fiduciary duty, breach of contract, and the implied covenant of good faith and fair dealing.

located. The *Canales* complaint appears to be substantially based on, and copied verbatim several paragraphs from, the first-filed *Bodea* complaint.[5] Canales' decision to file in California caused the parties and the Court to waste considerable time and effort to get *Canales* transferred to this District.

BMPC has held multiple discussions with Canales' Counsel regarding consolidation and transfer of *Canales*, including on October 1, 8, 10, and 14, 2024. *See* ECF Nos. 31, 40. After a conference among counsel for Defendants and Canales' Counsel, on October 10, 2024, the parties in *Canales* filed a joint statement stating that "Defendants plan to file a Motion to Transfer no earlier than seven days from the [October 7, 2024] Rule 7-3 conference." *Canales*, ECF No. 18 at ¶15. Canales' Counsel indicated they may oppose transfer to this Court (*id.* at ¶7) —even though Canales conceded in that same joint statement that "the proposed classes of 'all accountholders' in *Bodea* and *Lopez* are intended to and do, in fact, capture the class he seeks to represent." *Id.* at ¶10.

On October 14, 2024, the undersigned again discussed with Canales' Counsel how *Canales* might be accommodated within the structure of this consolidated action and proposed that *Canales* consent to consolidation in this Court. Canales' Counsel rejected the proposal and declined to agree to transfer. Plaintiff Bodea filed his motion seeking appointment of BMPC as Interim Class Counsel and BLB&G as Local Counsel the next day, on October 15, 2024. ECF Nos. 38, 39.

The parties continued to seek transfer of *Canales* to this Court, both by informal discussions and by motion practice. During a pre-motion conference on October 7, 2024, Canales

---

[5] It is notable that Canales' complaint lifts paragraphs directly from the cases filed in 2024 by Sweeps Counsel, and not from the complaint in *Valelly*. *Compare* ¶¶15, 22, 23, 24, 25, 41, 42, 46, 47, 48, 58, 68-72, 94-107 *with Canales* Complaint, *Canales v. JP Morgan Chase and Co.*, No. 1:24-cv-08377 (S.D.N.Y. Sep. 19, 2024), ECF No. 1, at ¶¶15, 24, 25, 26, 33, 34, 35, 38, 39, 78, 85-93, 100-113 (paragraphs either paraphrased or copied essentially verbatim).

indicated that he "had not yet decided whether to oppose" a transfer motion to this Court and had "reasons" why this was the case. Defendants filed a motion to transfer on October 21, 2024. On October 25, 2024, Canales' Counsel filed a notice indicating that they did not oppose the transfer motion, two weeks after indicating they "may oppose such a motion." At the Court's direction, the parties in *Bodea* provided updates on the status of these consolidation efforts by letters dated October 18, 26, and 29, and November 6. ECF Nos. 46, 47, 49. The *Canales* case was ultimately transferred to this Court on November 1, 2024. By joint letter filed in *Canales* on November 15, 2024, the parties agreed *Canales* should be consolidated but disagreed on whether Canales should be permitted to file a belated leadership motion. *Canales*, ECF No. 39. On November 18, 2024, the Court permitted Canales to file a leadership motion, which Canales filed on November 26, 2024. ECF No. 53.

### C.    Canales' Counsel's Tactics Here Exemplify a Larger Pattern

The dilatory and obstructionist efforts by Canales' Counsel are not limited to this case. In fact, Canales' Counsel has filed several other belated copycat class actions in satellite jurisdictions, like it did here, and appears intent on bypassing established leadership processes in those cases as well. These actions include the following:

- ***In re Wells Fargo Cash Sweep Litigation*, No. 24-cv-04616 (N.D. Cal.) (Chhabria, J.)**: BMPC filed their complaint on July 30, 2024 in the District Court for the Northern District of California. On September 23, 2024, following consolidation, the Court set a deadline of September 30 for motions seeking appointment of interim class counsel. On October 14, Canales' Counsel filed a separate sweeps case in the Central District of California asserting overlapping claims against overlapping Wells Fargo defendants. *Chakravarthy v. Wells Fargo & Co.*, No. 24-cv-08831 (C.D. Cal.) (Olguin, J.).

- ***In re Charles Schwab Cash Sweep Litigation*, No. 24-cv-07344 (C.D. Cal.) (Almadani, J.)**: BMPC filed their complaint on August 28, 2024 in the District Court for the Central District of California. Three related sweeps cases were consolidated before Judge Almadani in the Central District of California. On October 17, 2024, counsel for plaintiffs in the three earlier-filed lawsuits moved for interim leadership. A week later, Canales' Counsel filed a separate case in the Middle District of Florida

6

asserting overlapping claims against the same Charles Schwab defendants. *Morris v. Charles Schwab*, No. 24-cv-985 (M.D. Fla.) (Chappell, J.).

- ***Mehlman v. Ameriprise Financial, Inc.*, No. 24-cv-03018 (D. Minn.) (Tunheim, J.):** BMPC filed their complaint on August 21, 2024 in the District Court for the District of Minnesota and co-counsel filed an earlier complaint on July 29, 2024 in the District of Minnesota. On September 20, 2024, counsel for plaintiffs in those cases moved to consolidate and for appointment as interim class counsel. On October 3, the court entered an order consolidating the two cases and counsel for plaintiffs were appointed as Interim Co-Lead Counsel. Eleven days after that appointment, Canales' Counsel filed a separate sweeps case against Ameriprise in the Central District of California asserting overlapping claims. *Lourenco v. Ameriprise Financial, Inc.*, No. 24-cv-08825 (C.D. Cal.) (Almadani, J.).

- ***Schmidlin v. Raymond James Financial, Inc.*, No. 24-cv-02041 (M.D. Fla.) (Mizelle, J.):** BMPC filed their complaint on August 27, 2024 in the Middle District of Florida, which was consolidated with a related class action on November 14, 2024. On December 9, 2024, BLB&G and co-counsel were appointed Interim Class Counsel in the consolidated action. That same day, Edelsberg filed a separate case against Raymond James in the Middle District of Florida. *Cunningham v. Raymond James Financial*, No. 24-cv-02843 (M.D. Fla.) (Wilson, J.).

Canales' Counsel's filings have required the parties and courts to expend substantial energy and resources seeking their transfer to the proper first-filed courts where the cases are well underway with established leadership structures. For example, BMPC and BLB&G as interim class counsel, as well certain of the defendants in the consolidated class actions, have already filed and fully briefed Section 1404 transfer motions in Wells Fargo, Charles Schwab, and Ameriprise to seek transfer of the cases that Canales' Counsel filed to the first-filed district courts. In each of these instances, Canales' Counsel has tried to leverage the filing of these satellite cases to seek an interim counsel role outside of established leadership processes and deadlines established by those courts, putting its own interests above those of the class.[6]

---

[6] *Chakravarthy v. Wells Fargo & Co.*, No. 24-cv-08831 (C.D. Cal. Nov. 12, 2024) (ECF No. 19); *Morris v. Charles Schwab*, No. 24-cv-985 (M.D. Fla. Nov. 25, 2024) (ECF No. 13); *Lourenco v. Ameriprise Financial, Inc.*, No. 24-cv-08825 (C.D. Cal. Nov. 13, 2024) (ECF No. 30).

## III.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 23(g)(3), the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y 2016) (quoting Fed. R. Civ. P. 23(g)(3)). Courts regularly appoint interim co-lead counsel in the early stages of complex proceedings like this one. *See, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 438 (S.D.N.Y. 2019) (Schofield, J.) (appointing class counsel where the firms appointed "have completed extensive work identifying and investigating potential claims in this action, have committed sufficient resources to representing the class and, as discussed above, have broad experience litigating class actions and knowledge of the applicable law.").

Members of a proposed class are adequately represented so long as the proposed class representative has "an interest in vigorously pursuing the claims of the class" and has "no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "Not every conflict among subgroups of a class will prevent class certification—the conflict must be 'fundamental' to violate Rule 23(a)(4)." *Id.*

## IV.    ARGUMENT

There is no need to appoint Canales' Counsel as separate subclass counsel here. Plaintiff Bodea and his counsel will protect the interests of retirement accountholders. BMPC and BLB&G, working collaboratively with Sweeps Counsel, have been at the forefront of efforts to recover from financial institutions on behalf of aggrieved accountholders whose cash was improperly used in cash sweep programs to generate enormous profits at its clients' expense. BMPC, led by Michael Dell'Angelo and the team of attorneys he assembled, filed the first complaint on behalf of JPMorgan clients and have led the efforts in developing these claims. BMPC, BLB&G, and

Sweeps Counsel are sophisticated and ideally suited to prosecute the claims related to the retirement accountholders. Indeed, these firms have been working to investigate, file, and prosecute such claims against JPMorgan and other financial firms for nearly a year.[7]

By contrast, Canales' Counsel effort to represent a subclass is a transparent attempt to circumvent the first-filed rule and to have his counsel insert themselves into a leadership structure that is already working collaboratively to prosecute this Action. There is no reason to appoint separate subclass counsel. BMPC can effectively lead this case with their proposed leadership structure. Appointment of Canales' Counsel would be entirely unworkable and would delay the class's efforts to recover on their claims.

### A.    There is No Need For Separate Subclass Counsel

Canales' Motion rests on the central premise that some vague and undefined difference exists between retirement accountholders and the rest of the proposed class, and that this is sufficient reason to appoint his counsel to represent a subclass. Canales' argument is unsupported and misguided. There is no need for separate subclass counsel.

***First***, Plaintiff Bodea had a JPMorgan retirement account (Supp. Decl. at ¶8), and can represent ***all*** JPMorgan accountholders that were harmed by JPMorgan's misconduct. Canales is unnecessary to represent retirement accountholders in the Action. While the *Bodea* Complaint does not specify Bodea's specific type of account, it alleges that "Plaintiff was a JPMS customer [and] the cash held in his account was automatically 'swept' into a low interest-bearing bank

---

[7] *See, e.g.*, *Peters v. LPL Financial Holdings, Inc.*, No. 24-cv-1228 (S.D. Cal. July 17, 2024); *Mehlman v. Ameriprise Financial, Inc.*, No. 24-cv-3018 (D. Minn. July 29, 2024); *Bujold v. Wells Fargo & Co.*, No. 24-cv-4616 (N.D. Cal. July 30, 2024); *Schmidlin v. Raymond James Financial, Inc.*, No. 8:24-cv-02041 (M.D. Fla. Aug. 27, 2024); *Loughran v. Charles Schwab Corporation*, No. 24-cv-7344 (C.D. Cal. Aug. 28, 2024); *Davitt v. UBS Financial Services, Inc.*, No. 24-cv-6692 (S.D.N.Y. Sept. 3, 2024).

account at JPMCB pursuant to the Bank Deposit Sweep Program." ¶11. Additional details concerning Bodea's accounts can be added to an amended complaint. Supp. Decl. at ¶8. Further, BMPC has recently been retained by another plaintiff, Richard Quigley, Jr., who intends to join the Action as a class representative to serve alongside Mr. Bodea. Supp. Decl. at ¶9. Mr. Quigley has multiple retirement accounts that were subject to JPMorgan's Programs. *Id*.

**Second**, because Bodea had a JPMorgan retirement account and a non-retirement brokerage account, the proposed class in the *Bodea* Complaint already includes retirement accounts. The *Bodea* Complaint alleges a proposed class of "[a]ll persons who held cash positions in accounts custodied by Defendants, and whose cash was subject to Defendants' Bank Deposit Sweep Program." ¶53. This class definition encompasses retirement accounts and will fully protect the interest of the retirement accounts that are part of Canales' proposed subclass. In his motion, Canales falsely implies that actions brought by BMPC against other financial institutions by BMPC do not include retirement accounts. Canales Motion at 6-7. In fact, all the cash sweep actions brought by BMPC include retirement accountholders in the class definition, as well as any other accounts that were subject to the relevant cash sweep programs. Canales also mentions that BMPC has added retirement account subclasses when filing consolidated complaints in other actions. *Id.* While BMPC and Sweeps Counsel have decided to add specific retirement subclasses in certain cases following consolidation, this does not change the fact that the proposed class in *Bodea* includes both retirement accounts and non-retirement accounts.

Further, Plaintiff Bodea and his counsel may ultimately make the strategic decision to include a subclass in the amended complaint. However, this is simply a matter of litigation strategy and does not change the fact that retirement accounts are part of Bodea's proposed class. As noted above, Canales' Counsel conceded in a statement filed with the Court regarding

transfer from California that "the proposed classes of 'all accountholders' in *Bodea* and *Lopez* are intended to and do, in fact, capture the class he seeks to represent—i.e., holders of retirement accounts." *Canales*, ECF No. 18 at ¶10. Yet in Canales' Motion, Canales changes his tune and now claims it "would be mistaken to view [the proposed] Retirement Account Subclass as 'fully subsumed by *Bodea.*'" Canales Motion at 3 (citing Bodea Motion at 9). Canales' first position was correct: his proposed class is fully subsumed by the *Bodea* Action.

**Third**, Canales does not and cannot establish that there is a "fundamental" difference between the failure to pay reasonable rates of interest to retirement accountholders and the failure to pay reasonable rates of interest to **all** JPMorgan accountholders, regardless of where that duty to pay reasonable rates arises. *See Charron v. Wiener*, 731 F.3d 241, 250 (2d Cir. 2013) (for separate subclass counsel to be necessary, there must be a "a fundamental conflict" that goes "to the very heart of the litigation"). Canales' Counsel has not demonstrated any conflict involving retirement accountholders, much less a fundamental conflict that would necessitate appointing subclass counsel. While Canales identifies regulations that prohibit interested party transactions with respect to retirement accounts unless they bear a reasonable rate of interest (Canales Motion at 12), Canales does not explain how the existence of these regulations makes BMPC's and BLB&G's representation of retirement accountholders "antagonistic to the interests of other class members." *See Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d at 249 (quoting *Denney*, 443 F.3d at 268). Instead, Canales' Counsel merely alludes to undefined "material differences" and "potentially diverging or conflicting interests" that are never identified. Canales Motion at 13-15. As such, separate subclass counsel is unnecessary.

In fact, courts have routinely appointed leadership structures exactly like the one Bodea proposes here, and have repeatedly and forcefully rejected arguments that separate leadership is

needed concerning hypothetical conflicts that were far more concrete than the one Canales'
Counsel imagines here. *See, e.g.*, *In re Treasury Sec. Auction Antitrust Litig.*, 2017 WL 10991411,
at *3 (S.D.N.Y. Aug 23, 2017) (rejecting argument that separate representation was needed for
futures-only investors); *In re Gold Fixing Antitrust Litig.*, 2014 WL 12993488, at *2 (S.D.N.Y.
June 16, 2014) (rejecting request to appoint counsel to represent class members required to plead
different factual allegations because "[t]o create putative subclasses before these potential conflicts
develop places the cart before the horse at great expense to all class members"). Consistent with
the case law, courts have appointed BPMC and Sweeps Counsel as interim lead counsel—without
any separate subclass counsel—in each of the concurrent cash sweep cases where interim
leadership has been decided. *See* Supp. Decl. Exs. C, D, E, and H; Joint Decl. Ex. E.

Indeed, the cases cited by Canales undercut his position by demonstrating the type of actual
conflicts that necessitate a subclass and separate subclass counsel. *See* Canales Motion at 13-14.
*Ortiz v. Fibreboard Corporation*, 527 U.S. 815 (1999), concerned a class asserting asbestos-related
claims "divided between holders of present and future claims (some of the latter involving no
physical injury and attributable to claimants not yet born)" in which the goal for the currently
injured was "generous immediate payments" while the goal for the claimants with future claims
was "ensuring an ample, inflation-protected fund for the future." *Id.* at 856. *In re Payment Card
Interchange Fee & Merchant Discount Antitrust Litigation*, 827 F.3d 223 (2d Cir. 2016), similarly
concerned a "clear" conflict between merchants "pursuing solely monetary relief" and merchants
"seeking only injunctive relief." *Id.* at 233. No such conflict exists here as the retirement account
investors have the same interest in the litigation as the holders of non-retirement accounts.

Nor does *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 407 F. Supp. 3d
422 (S.D.N.Y. 2019), support Canales' position. In that case, class certification was denied under

Rule 23(a)(4) where Plaintiffs failed to establish that "the representative parties will fairly and adequately protect the interests of the class" due to "conflicts of interest between class representatives and class members." *Id.* at 438. The court noted that "[t]he Named Plaintiffs and their class member counterparties would have ***directly conflicting incentives*** to establish whether spread manipulation occurred on certain dates and the extent to which it affected their transactions." *Id.* at 439. Here, there is no such conflict. Mr. Bodea and Mr. Quigley are both retirement accountholders, their incentives are directly aligned with the other retirement accountholders.

### B.    Coordination With Canales' Counsel Is Untenable

Canales' Counsel is not seeking to litigate separately from BMPC, BLB&G, or the other Sweeps Counsel firms, but instead seeks appointment as part of a "leadership structure" by which they will "collegially work with BMPC." Canales Motion at 3. History suggests otherwise. Canales' Counsel have engaged in obstructionist and dilatory tactics for months, seeking to throw sand in the gears of the actions filed by BMPC, BLB&G and the other Sweeps Counsel. This is not a recipe for collaboration.

BMPC and BLB&G have decades of experience successfully prosecuting significant complex class actions like this one and a proven ability to work together to achieve successful outcomes for the classes they represent. Bodea Motion at 9-13. For example, in addition to their prosecution of parallel claims of securities and commodities investors, respectively, in the *MF Global* matter before Judge Marrero, BMPC and BLB&G successfully resolved investors' claims for $78.5 million following a four-day bench trial in *In re CVR Refining Unitholder Litigation*—a result the court described as an excellent settlement for the class.

Moreover, BMPC, led by Michael Dell'Angelo, established case management protocols to make sure their prosecution of this case will serve the best interests of the class. Supp. Decl. at ¶7.

Specifically, BMPC's protocols—which will apply to BMPC and any other firms assisting in the prosecution of these claims in any way—will help to ensure that schedules are met and that unnecessary expenditures of time and funds are avoided. *See* MANUAL FOR COMPLEX LITIGATION, §§14.212-14.213, 40.22 (4th ed. 2004). Among other things, the protocols seek to minimize duplication of effort, efficiently allocate case tasks, and ensure that all attorney time and expenses are contemporaneously recorded and regularly reviewed and monitored. Supp. Decl. at ¶7. In addition, the fact that BMPC, BLB&G, and Sweeps Counsel supporting this motion are working together to prosecute similar cases around the country will reduce expenses, as it will lead to cost efficiencies through economies of scale and allow factual and strategic development to be leveraged across cases. Indeed, in recognition of their ability to work together to prosecute similar claims and the advantages their collaboration will provide, BMPC, BLB&G, and Sweeps Counsel supporting this motion have been appointed as interim class counsel in five other class actions alleging similar misconduct by Ameriprise, UBS, LPL Financial, Charles Schwab and Raymond James. Supp. Decl. at ¶4.

Canales' Counsel, on the other hand, have been purposefully undermining these efforts—and wasting the courts' and the parties' resources—by filing cases that lift paragraphs verbatim from Sweeps Counsel's cases, even against defendants where lead counsel has already been appointed in consolidated cases located in other districts. The actions of Canales' Counsel and interactions to date strongly suggest collaboration would be problematic. This is further illustrated by Canales' Counsel's recent behavior in this case: after the Court instructed the parties to file a stipulation to consolidate *Canales*, Canales' Counsel refused and instead demanded to include argument in a joint letter about whether they should be permitted to move for leadership. Supp. Decl. at ¶12.

It is telling that Canales does not even propose *how* his counsel arrangement would work with BMPC and BLB&G or how tasks would be divided. Also, absent from Canales' Motion is any description of the discussions that have taken place between his counsel and BMPC in an effort to reach some mutual understanding. Supp. Decl. at ¶11. Far from promoting an environment of collaboration, Canales' Counsel instead expressly stated to BMPC that it will continue to undermine Sweeps Counsel's efforts if Canales's counsel is not included in the leadership structure. Supp. Decl. at ¶13.[8] Courts have declined to appoint additional counsel under circumstances like these, recognizing that doing so risks dysfunction. *See, e.g.*, *La. Health Serv. & Indemnity Co. v. Janssen Biotech Inc.*, 2021 WL 486895, at *3 (D.N.J. Feb. 10, 2021) (declining to appoint competing counsel because it did not seem competing counsel could be "incorporated into the leadership structure without risking dysfunction").

### C. Proposed Interim Class Counsel Has Expended Significant Time and Resources to Investigate the Class's Claims Without Subclass Counsel

BMPC, BLB&G, and Sweeps Counsel supporting this Motion have undertaken an extensive (and ongoing) investigation into JPMorgan's alleged misconduct, the facts surrounding its Cash Sweep Programs, and the applicable law that provides the strongest basis for recovery for the proposed class. Bodea Motion at 7-9. BMPC's and BLB&G's investigation has already resulted in a detailed pleading that demonstrates a thorough analysis and understanding of the facts and relevant documents. BMPC's and BLB&G's team of lawyers and other professionals the firms have assembled to prosecute these claims, together and with the guidance of Professors Jackson and Hu and the other Sweeps Counsel firms, have become experts in the mechanics of

---

[8] BMPC and BLB&G have been able to work collaboratively with Nussbaum, who represents Plaintiff Lopez in this action and who has not engaged in any of the delay tactics employed by Canales' Counsel.

bank cash sweep programs, the conflicts of interest behind those programs, the legal claims they will need to prove, and the anticipated defenses that brokerage customers will need to overcome. Indeed, five different district courts have appointed Sweeps Counsel firms, including BMPC and/or BLB&G, as Interim Co-Lead Class Counsel in cases against Ameriprise, UBS, LPL Financial, Charles Schwab, and Raymond James. Supp. Decl. at ¶4.

If appointed as Interim Class Counsel here, BMPC intends to file an amended complaint that includes additional detailed allegations derived from the firm's extensive ongoing expert work and data analysis that demonstrates the unreasonableness of JPMorgan's sweep rates—just as BMPC, BLB&G, and Sweeps Counsel supporting the Bodea Motion have done in a similar cash sweep case against Morgan Stanley pending in this District, as well as against Ameriprise and UBS. *See, e.g.*, Joint Decl. Ex. F at ¶¶97-107; Supp. Decl. Ex. F at ¶¶114-21; Supp. Decl. Ex. G at ¶¶110-20. Allegations backed by such evidence will not only maximize the class's likelihood of overcoming JPMorgan's anticipated motion to dismiss, but also will provide the class with a head start in discovery, class certification, summary judgment, and proving liability at trial. *See, e.g.*, *In re Bystolic Antitrust Litig.*, 2020 WL 6700830, at *1 (S.D.N.Y. Nov. 12, 2020) (appointing firms that "were the first to identify the claims in these actions and to investigate them and have expended substantial resources to do so"); *Treasury Sec. Auction Antitrust Litig.*, 2017 WL 10991411, at *2-3 (S.D.N.Y. Aug. 23, 2017) (appointing interim counsel that were first to file the claims and had "demonstrated a commitment to investing the resources and hours necessary to effectively litigate this matter" including because they "interviewed confidential witnesses and industry insiders [and] worked with leading experts to parse the data").

BMPC's extensive previous and continuing work, including with leading experts in this area, to develop strong evidence support the claims in this case confirms they are

particularly well-suited to represent the interests of the ***entire*** proposed class.

      **D.**    **Proposed Interim Class Counsel is Committed to Utilizing their Incomparable Resources to Adequately Represent the Class**

Given that this Action will be litigated on a contingent basis, it will be particularly important that counsel have the deepest and broadest possible resources, especially because the class will be litigating against one of the largest, most well-funded companies in the world, represented by top-flight law firms. Led by Michael Dell'Angelo, BMPC has ample resources to successfully prosecute these claims against JPMorgan, as it has against numerous other financial services companies over the course of its history. Tellingly, Canales' Counsel ***does not oppose*** BMPC's appointment of lead counsel, instead requesting to "join a leadership team" that includes BMPC as overall class lead.

While Canales' Counsel points to its own prosecution of several class actions, that experience does not equal the diversity of experience and success that BMPC, BLB&G, and Sweeps Counsel have achieved in high-stakes litigation involving financial misconduct like the claims at issue here. In fact, Canales' Counsel's hurried efforts to file cash sweep cases in other districts where they do not belong, either immediately before or immediately after Sweeps Counsel firms were appointed lead counsel, betrays the notion that Canales' Counsel has sufficient experience, qualifications, or resources. If anything, they have demonstrated the opposite.  For example, Canales' Counsel has sought the extension of briefing deadlines to oppose the Section 1404 motions Sweeps Counsel have filed on the ground that Canales' Counsel lacked the resources to litigate them, noting that they were "dealing with the press of other matters." *Chakravarthy v. Wells Fargo & Co.*, No. 24-cv-08831 (C.D. Cal. Nov. 25, 2024) (ECF No. 28).   Rather, it appears that Canales' Counsel merely wants to benefit from BMPC and other Sweeps Counsel's considerable resources and piggy-back off work Bodea's counsel have already performed. Canales

does not sufficiently identify what, if anything, his counsel would bring to a leadership team that is not already present and superior.

*Subject-matter expertise.* BMPC and BLB&G have an unparalleled track record prosecuting similar claims against major financial institutions and achieving record recoveries for injured investors and consumers in this District. Supp. Decl. at ¶2. Their achievements demonstrate that they have the wherewithal to vigorously and effectively litigate this case through resolution—with vast experience litigating complex class actions on behalf of those who have suffered harm at the hands of brokerage firms, banks and other financial institutions. The firms have worked together in complex litigation for years and have a wealth of knowledge and insight will inure directly to the benefit of the class. BMPC and BLB&G also have extensive experience dealing with the regulatory regime that applies to retirement accounts and have assembled teams of attorneys and experts who are intricately familiar with the laws protecting retirement accountholders. Supp. Decl. at ¶3. By contrast, Canales' Counsel does not refer to any practical experience protecting retirement accountholders in class action, certainly no experience that would render them a subject matter expert.

*Financial and staffing resources*. BMPC has ample financial resources and have already demonstrated their commitment to devoting the resources necessary to maximize the class's recovery. Bodea Motion at 14. BMPC and BLB&G made a significant investment in the proprietary data needed to plead and prove investors' claims in this case, and retained experts who will be able to provide critical consulting and expert testimony as the case proceeds. Joint Decl. at ¶¶6-7. Michael Dell'Angelo and his team have also committed significant time and resources to this case, and will continue to do so until it is resolved. *Id.* at ¶¶9-10.

Tacitly recognizing that BMPC has the financial resources necessary to lead this case,

Canales' Counsel does not describe any financial benefit its involvement in leadership would provide the Class or co-counsel. Canales' Counsel only states that it would "self-fund this litigation, as they always do." Canales Motion at 20. Moreover, the fact that Canales' proposed lead firm, Edelsberg Law, has sought to be involved in at least five other large cash sweep cases and engaged in protracted and dilatory battles over transfer and leadership, despite only having five attorneys, demonstrates that Canales' resources are stretched thin and insufficient to serve in any leadership role here. Indeed, Canales' Counsel made clear in one of the sweeps cases that they were unable to comply with the local briefing rules because of the "press of other matters," suggesting a lack of any meaningful resources to devote to this case.

BMPC and BLB&G have an ideal geographic reach with more than 230 attorneys in offices throughout the U.S. Bodea Motion at 15. BLB&G maintains its primary office in New York City where JPMorgan is headquartered. Because the relevant conduct took place in New York and in JPMorgan's locations throughout the country, attorneys and offices throughout the country may well be needed. By contrast, Edelsberg Law consists of five attorneys based in California or Florida. Proposed subclass counsel Adam Schwartzbaum is based in Miami Beach. Kopelowitz Ostrow has three offices that are all in South Florida, and proposed subclass counsel Jeff Ostrow is based in Fort Lauderdale. Curiously, even Canales' proposed local counsel, Shamis & Gentile, P.A., is based in Miami.

***Trial and appellate resources***. As set forth in Bodea's Motion, BMPC and BLB&G offer the proposed class a vast wealth of trial experience. Bodea Motion at 15-17. Each firm has an exemplary record in securing class recoveries at trial, with each firm securing critical trial verdicts over the past year alone, yielding billions of dollars in recoveries, as well as in securing critical appellate victories for the classes they represent. Canales' Counsel's Motion, by contrast,

19

references trial and appellate experience in the abstract but does not concretely identify or describe any trials that Canales' Counsel have participated in.

In sum, by designating BMPC as Interim Class Counsel and BLB&G as Local Counsel and rejecting Canales' Counsel's request to unnecessarily join the leadership structure, this Court can be assured that this action will be vigorously prosecuted in an effective manner, and that the proposed class will receive the highest caliber of representation. The Class does not benefit from the addition of Canales' Counsel.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff Bodea respectfully requests that the Court (i) grant his Motion for Appointment of Interim Class Counsel; (ii) appoint BMPC as Interim Class Counsel; (iii) appoint BLB&G as Local Counsel; (iii) deny Canales' Motion for appointment of subclass counsel; and (iv) grant such further relief as it deems appropriate.

DATED: December 10, 2024                    Respectfully submitted,

*/s/ John Rizio-Hamilton*
Salvatore J. Graziano
John Rizio-Hamilton
Avi Josefson
Michael D. Blatchley
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
salvatore@blbglaw.com
johnr@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

Michael Dell'Angelo (*pro hac vice*)
Jacob M. Polakoff (*pro hac vice* forthcoming)
Alex B. Heller (*pro hac vice*)
Radha Nagamani Raghavan
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600

Philadelphia, PA 19103
Telephone: (215) 875-3000
mdellangelo@bm.net
jpolakoff@bm.net
aheller@bm.net
rraghavan@bm.net

***Counsel for Plaintiff and Proposed Interim
Counsel for the Class***