**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re JP Morgan Chase Cash Sweep Program* | Case No. 1:24-cv-06404-LGS-SN |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**JONES DAY**
**250 Vesey Street**
**New York, New York 10281**
*Counsel for Defendants*

**TABLE OF CONTENTS**

ARGUMENT..................................................................................................................... 1

I.     Plaintiffs' Breach of Contract Claim Should Be Dismissed. ............................................. 1

   A.   JPMS Did Not Promise to Procure a Higher Interest Rate. ............................................. 1

      1.   The disclosure that rates will "vary" at Chase Bank's "discretion" imposed no obligation on JPMS. ................................................................................................. 1

      2.   The tax code's "reasonable rate" disclosure is not a contractual promise.................. 3

      3.   Contractual duties related to investment recommendations are not implicated. ......... 6

   B.   Even If Plaintiffs Could Identify an Enforceable Duty, Their Contract Claim Fails....... 6

   C.   Neither *Valelly* Nor *Robinhood* Supports Plaintiffs' Arguments..................................... 8

II.    Plaintiffs Cannot Proceed on Their Fiduciary Claim....................................................... 8

   A.   The Fiduciary Claim Impermissibly Duplicates the Contract Claim.............................. 8

   B.   The Agreements Do Not Create Any Fiduciary Duty Regarding the Interest Rate. ........ 9

III.   Plaintiffs Fail to State an Implied Covenant Claim. ...........................................................11

IV.    Plaintiffs' Unjust Enrichment Claim Cannot Stand. ...........................................................11

V.     Plaintiffs State No Claim Against JPMorgan Chase & Co. ............................................. 12

CONCLUSION.................................................................................................................. 12

i

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Renaissance Lines, Inc. v. Saxis S.S. Co.*,
   502 F.2d 674 (2d Cir. 1974)..................................................................................................2

*Aramony v. United Way of Am.*,
   254 F.3d 403 (2d Cir. 2001)..................................................................................................4

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
   448 F.3d 573 (2d Cir. 2006)................................................................................................11

*Broder v. Cablevision Sys. Corp.*,
   329 F. Supp. 2d 551 (S.D.N.Y. 2004)..................................................................................4

*Carlton Grp., Ltd. v. Mirabella SG SpA*,
   2018 WL 3520494 (S.D.N.Y. July 19, 2018) .....................................................................10

*Celle v. Barclays Bank P.L.C.*,
   851 N.Y.S.2d 500 (1st Dept. 2008) ......................................................................................9

*Churchill Real Estate Holdings LLC v. CBCS Washington St. LP*,
   95 N.Y.S.3d 526 (1st Dept. 2019) ......................................................................................11

*Claridge v. N. Am. Power & Gas, LLC*,
   2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015).......................................................................2

*de Kwiatkowski v. Bear, Stearns & Co.*,
   306 F.3d 1293 (2d Cir. 2002)..............................................................................................10

*DeBlasio v. Merrill Lynch & Co.*,
   2009 WL 2242605 (S.D.N.Y. July 27, 2009) .......................................................................9

*Dey v. Robinhood*,
   2025 WL 1322716 (N.D. Cal. Apr. 28, 2025) ................................................................ *passim*

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003)................................................................................................3, 4

*Gunther v. Cap. One, N.A.*,
   703 F. Supp. 2d 264 (E.D.N.Y. 2010) ..................................................................................4

i

*Harte v. Ocwen Fin. Corp.*,
    2016 WL 1275045 (E.D.N.Y. Mar. 31, 2016) ...................................................................12

*Hunter v. Deutsche Bank AG*,
    866 N.Y.S.2d 670 (1st Dep't 2008) .................................................................................2

*In re Lehman Bros. Holdings Inc.*,
    970 F.3d 91 (2d Cir. 2020).................................................................................................5

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
    2009 WL 321222 (S.D.N.Y. Feb. 9, 2009)........................................................................8

*Martinez v. Agway Energy Servs., LLC*,
    88 F.4th 401 (2d Cir. 2023) ......................................................................................3, 5, 6

*Mirkin v. Viridian Energy, Inc.*,
    2016 WL 3661106 (D. Conn. July 5, 2016) .....................................................................2

*Mirkin v. XOOM Energy, LLC*,
    931 F.3d 173 (2d Cir. 2019)..............................................................................................2

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)..............................................................................................7

*Sokoloff v. Harriman Estates Dev. Corp.*,
    96 N.Y.2d 409 (2001) .....................................................................................................10

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018).............................................................................................11

*Valelly v. Merrill Lynch*,
    2021 WL 240737 (S.D.N.Y. Jan. 25, 2021) ..................................................................1, 8

*Valelly v. Merrill Lynch*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020)................................................................................5

*Veleron Holding, B.V. v. Morgan Stanley*,
    117 F. Supp. 3d 404 (S.D.N.Y. 2015)................................................................................9

**OTHER AUTHORITIES**

SEC Adopting Release, *Regulation Best Interest: The Broker-Dealer Standard of
    Conduct,* Rel. No. 34-86031 (June 5, 2019), available at
    https://www.sec.gov/files/rules/final/2019/34-86031.pdf .................................................6

In their written contract with Defendant J.P. Morgan Securities LLC ("JPMS"), Plaintiffs authorized JPMS to transfer their uninvested cash to Chase Bank, where Plaintiffs earned the precise interest rate JPMS disclosed.  Plaintiffs now assert legal theories that defy those contracts, settled law, and the very cases they cite.

In their Complaint and Opposition, Plaintiffs insist that JPMS was duty-bound to procure them an interest rate that would track market interest rates.  Not so.  Their contracts with JPMS disclosed that the rate would be determined "at the discretion of" Chase Bank—a non-party to Plaintiffs' contracts and to this lawsuit.  Unable to find support in the contracts, Plaintiffs argue that the caselaw supports their claims.  Wrong again.  Nowhere is this clearer than in Plaintiffs' misplaced reliance on *Valelly v. Merrill Lynch* and *Dey v. Robinhood—Valelly* addressed none of the arguments JPMS raises here and *Robinhood* did not even involve a contract claim.  The Court should reject Plaintiffs' invitation to blindly rely on their flawed characterization of the contracts and caselaw, and dismiss the Complaint in its entirety.

## ARGUMENT

## I.   PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED.

Plaintiffs' allegations and arguments cannot vary the actual terms of their contracts. JPMS never promised to procure a different rate than the one disclosed to Plaintiffs.  In any event, Plaintiffs failed to perform their contractual obligations and fully released these claims.

### A.   JPMS Did Not Promise to Procure a Higher Interest Rate.

1.   *The disclosure that rates will "vary" at Chase Bank's "discretion" imposed no obligation on JPMS.*

Plaintiffs argue that JPMS promised to procure a higher rate when it disclosed that their rate "will vary based on business and economic conditions…***at the discretion of [Chase Bank]***."

1

Opp.3 (emphasis altered).[1]  But this is a textbook risk disclosure.  Plaintiffs cannot convert this *discretion of Chase Bank* into a contractual *obligation of JPMS*.

Plaintiffs first argue that other courts supposedly found "an enforceable and binding contractual promise" based on "similar language."  Opp.3.  That is just false.  Plaintiffs lean heavily on *Robinhood*—but the court there made no such finding.  Instead, the plaintiffs in *Robinhood* argued that the language was sufficient to sustain a misrepresentation claim.  *See* Opp.4 n.3.  But Plaintiffs here have not alleged a misrepresentation claim.

Equally unpersuasive are Plaintiffs' cases where the ***contracting party*** itself set the rates. *E.g.*, *Mirkin v. Viridian Energy, Inc.*, 2016 WL 3661106, at *8 (D. Conn. July 5, 2016) (breach "where one party to a contract" exercised "discretion beyond" contractual limits); *Claridge v. N. Am. Power & Gas, LLC*, 2015 WL 5155934, at *6 (S.D.N.Y. Sept. 2, 2015).  Here, as Plaintiffs admit, the agreements provided that non-party Chase Bank had the discretion to set rates.  Opp.5-6.  That distinction makes all the difference because, under long-settled law, Chase Bank and JPMS are separate legal entities.  *See Am. Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677 (2d Cir. 1974).  JPMS did not accept duties with respect to Chase Bank's discretion, any more than Plaintiffs did.

Plaintiffs next try to rewrite the disclosure to impose a duty to follow "market interest rates."  Opp.11.  Such a revision would improperly make Chase Bank's discretion "meaningless."  *Hunter v. Deutsche Bank AG*, 866 N.Y.S.2d 670, 671 (1st Dep't 2008).[2]  By ignoring the word "discretion," Plaintiffs analogize this case to those where the party setting

---

[1] Internal quotation marks and citations generally are omitted.  Citations to "Ex." are exhibits attached to ECF No. 86.

[2] The First Department's decision was based entirely on the fact that the contracts left bonuses to the employer's "discretion."  *Hunter*, 866 N.Y.S.2d at 671; *contra* Opp.6-7 n.4.

prices **lacked discretion**. *E.g.*, Opp.11 (quoting *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 177 (2d Cir. 2019)). But the Second Circuit has distinguished Plaintiffs' cited authority based on the "critical[]" difference between contracts providing for "discretion" and those that do not. *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 411 (2d Cir. 2023). Moreover, the disclosure here never mentioned "market interest rates," Opp.11, much less promised that the non-party's discretion would be limited to those rates. *See Martinez*, 88 F.4th at 412.

Finally, Plaintiffs mistakenly argue that Defendants' position reads the phrase "will vary based on business and economic conditions" out of the contract. Opp.5. The phrase "will vary" is a warning of future action by a non-party. And, as predicted in the disclosure and admitted by Plaintiffs, the rate did, in fact, vary. Compl. ¶52. While Plaintiffs may have preferred Chase Bank to have set different, higher rates, that is not what the contract required.

2.    *The tax code's "reasonable rate" disclosure is not a contractual promise.*

Moving from one disclosure to another, Plaintiffs hyperfocus on the phrase "reasonable rate" in their IRA agreements. As Plaintiffs acknowledge, the "reasonable rate" language comes verbatim from the tax code's implementing regulation (cited in the disclosure), and it applies only to the IRA subclass. *See* Opp.7-9 & n.6; Compl. ¶117. This language does not constitute an enforceable contractual duty either—let alone one that somehow stands independent of other contractual terms.

***First***, Plaintiffs bury in a footnote controlling authority that precludes them from enforcing the "reasonable rate" language. Opp.9 n.7. In *Grochowski v. Phoenix Construction*, the Second Circuit held that the plaintiffs could not enforce a contractual provision that incorporated a federal statute's payment requirements, because the statute itself lacked a private right of action. *See* 318 F.3d 80, 84-86 (2d Cir. 2003). So too here. Plaintiffs admit that the "reasonable rate" language comes from the tax code, Opp.7-9 & n.6; Compl. ¶117, and do not

3

dispute that the tax code denies them a private cause of action, Opp.22. Accordingly, Plaintiffs' asserted contract claim is "an impermissible 'end run' around" that restriction. *Grochowski*, 318 F.3d at 86; *see* Mot.12-13.

Plaintiffs' only response is that the parties in *Grochowski* "were not in contractual privity." Opp.9 n.7. But that is a red herring: the plaintiffs there could have enforced the contract as third-party beneficiaries but for the fact that "no private right of action exists under the relevant statute." *Grochowski*, 318 F.3d at 86. Courts in this Circuit thus apply *Grochowski* even where the partes are in privity. *E.g.*, *Broder v. Cablevision Sys. Corp.*, 329 F. Supp. 2d 551, 558-59 (S.D.N.Y. 2004); *Gunther v. Cap. One, N.A.*, 703 F. Supp. 2d 264, 271 (E.D.N.Y. 2010). *Grochowski* is binding, and it bars Plaintiffs' contract claim.

***Second***, even apart from *Grochowski*, Plaintiffs cannot convert the "reasonable rate" disclosure into an enforceable promise. Mot.11-12. Far from a promise, the provision merely disclosed that JPMS "may invest" Plaintiffs' uninvested cash in "bank deposits bearing a reasonable rate of interest in [Chase Bank] so long as (to the extent necessary) such investment is in compliance with [tax exemptions]." Ex.E at 6; Ex.F at 5. Indeed, when interpreting other contractual language, Plaintiffs themselves emphasize the distinction between "***will***" and "***may***" to distinguish between a contractual promise and an unenforceable disclosure. Opp.4-5. But, when it comes to the "reasonable rate" term, Plaintiffs conveniently forget their own distinction and fail to explain how they can alchemize "may" into "will." Opp.7-10.

***Third***, even if the "reasonable rate" language were an enforceable promise, Plaintiffs cannot read that generic term to conflict with their agreed-to rate, which the contract includes through a URL. Mot.13-14. Quite the opposite—the specific disclosed rate ***must*** be the one the parties agreed was "reasonable." *E.g.*, *Aramony v. United Way of Am.*, 254 F.3d 403, 413-14 (2d

4

Cir. 2001) ("[S]pecific words will limit the meaning of general words.…").  Plaintiffs' only response is that their "agreements did not contain" the disclosed rate because the agreements only contained a link to the rate.  Opp.9 & n.8.  But that position ignores settled law, in which terms sufficiently identified in agreements generally are incorporated therein.  *E.g.*, *In re Lehman Bros. Holdings Inc.*, 970 F.3d 91, 101 (2d Cir. 2020) (contract includes terms of "referenced document"); *cf. Valelly v. Merrill Lynch*, 464 F. Supp. 3d 634, 641 (S.D.N.Y. 2020) (enforcing terms where "reasonably prudent user would have noticed the link and reviewed the terms before" agreeing).  Since the agreements identified the link to the "current rate," Plaintiffs cannot excise that term.  And the agreed-to rate prevails until non-party Chase Bank modifies it.  Ex.G at 1.[3]

*Fourth*, Plaintiffs' interpretation of "reasonable rate" as an "independent" and free-floating contractual promise would fundamentally restructure the parties' relationship, even obligating JPMS to treat nondiscretionary customers as discretionary ones.  Opp.10.  Under Plaintiffs' view, their rate should have tracked other rates.  *See* Opp.1-3.  That would require JPMS to "review…the investment of [their] cash" and "compare" their rate to others—but JPMS expressly disclaimed such responsibility for its nondiscretionary clients.  Ex.C at 5; Ex.G at 1.

*Finally*, by detaching the "reasonable rate" language from these other contractual terms, Opp.10, Plaintiffs drain the phrase of "the definiteness that New York law requires to make it enforceable."  *Martinez*, 88 F.4th at 416.  Indeed, Plaintiffs at times compare their rate to the Federal Funds Rate, Opp.1; sometimes to the rate available to JPMS's discretionary customers,

---

[3] This does not read "'reasonable rate'…out of the contract."  Opp.9.  Rather, it acknowledges that the agreements contemplated different rates for distinct accounts.  Mot.13.  Though Plaintiffs assert that "the agreements nowhere make this distinction," Opp.9, they are mistaken.  *E.g.*, Ex.G at 1 ("Interest rates may also vary between different Deposit Accounts offered to different JPMS customers.").

Opp.2-3; and still other times to a variety of other rates, Compl. ¶¶135-41; 146-52. If Plaintiffs divorce "reasonable rate" from other contractual terms, they could make it mean just about anything. But that "serves only to underscore the vagueness"—and unenforceability—of the term under their theory. *Martinez*, 88 F.4th at 416.

       3.    <u>*Contractual duties related to investment recommendations are not implicated.*</u>

Finally, Plaintiffs cannot rely on duties that arise only when JPMS makes investment "recommendations." *See* Opp.10-11. Trying anyway, Plaintiffs say JPMS made a recommendation "by automatically enrolling them" in the sweep program when they opened their accounts. Opp.21. But a "recommendation" is an individualized "call to action" that "reasonably would influence an investor to trade a particular security or group of securities." SEC Adopting Release, *Regulation Best Interest: The Broker-Dealer Standard of Conduct*, Rel. No. 34-86031, at 79-80 (June 5, 2019).[4] Far from making an individualized investment recommendation, JPMS generally offers the sweep program to everyone—complete with disclosures that warn potential customers to consider and compare rates. Mot.22-23. Moreover, Plaintiffs agreed to the automatic enrollment when they chose to create their accounts, *see* Opp.21, so any purported "recommendation" to urge them into the program would have occurred *before* they had any relationship with JPMS. Either way, any alleged recommendation-specific duties never arose.

**B.   Even If Plaintiffs Could Identify an Enforceable Duty, Their Contract Claim Fails.**

Plaintiffs' contract claim also must be dismissed because Plaintiffs (i) failed to allege that they performed their obligations and (ii) released their claims.

---

[4] Available at https://www.sec.gov/files/rules/final/2019/34-86031.pdf.

On performance, Plaintiffs do not deny that their agreements obligated them to review the interest rate as reflected in their periodic statements and "report suspected errors [to JPMS] within 10 days." Ex.C at 1. Plaintiffs neglected to perform their contractual obligations. Mot.14-15. Trying to sidestep this fatal defect, Plaintiffs incorrectly dub this argument "a red herring at worst and an affirmative defense at best." Opp.13. Plaintiffs argue they needed to report only innocent "mistakes," not any "willful under-payment." *Id.* Plaintiffs again read words into the contracts that are not there. The contracts obligated Plaintiffs to report even "suspected" problems with their rate, which they never did. Mot.14-15. Nor can Plaintiffs dodge their obligation by calling it an "affirmative defense." Plaintiffs must plead their performance, and failed to do so. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015).

Additionally, Plaintiffs released any claims because JPMS followed their "instructions" and "directions" to sweep their uninvested cash to Chase Bank. Mot.15-16. Plaintiffs again seek to rewrite the contracts, claiming now that they instructed JPMS to provide a "reasonable rate" that would "vary" based on economic conditions. Opp.13-14. Not only is this inconsistent with the contracts, but Plaintiffs' position also disregards that Plaintiffs alone managed their accounts. Every day when Plaintiffs opted to leave cash uninvested in their accounts, they triggered their authorization to sweep funds to Chase Bank to earn the disclosed rate. Compl. ¶58. Although Plaintiffs argue that JPMS exercised "control over" the sweep program and rates, Opp.6, the releases did not hinge on some fuzzy notion of ever-present "control"—they turned on "instructions" and "directions" from Plaintiffs. Since Plaintiffs themselves authorized the transfers, their agreements close the door on their claims.[5]

---

[5] That one release mentioned war and "other conditions beyond the Released Parties' control," Opp.13, does not deny the reality that Plaintiffs also expressly released claims caused by following their instructions. Mot.15-16.

C.    **Neither *Valelly* Nor *Robinhood* Supports Plaintiffs' Arguments.**

Plaintiffs continue to urge this Court to follow the holding in *Valelly*, without even attempting to address the fundamental differences between that case and this one that were detailed in a standalone section of Defendants' brief.  Mot.16-17.  Nor do they dispute that "Merrill Lynch did not press—and Judge Caproni did not address—*any* of the arguments JPMS advances with respect to its reasonable-rate provision." Mot.17.  Judge Caproni's consideration and partial rejection of a fact-intensive comparison to other rates has no bearing on the pleading, contract language, and legal arguments at issue here.  *See Valelly v. Merrill Lynch*, 2021 WL 240737, at *1 (S.D.N.Y. Jan. 25, 2021).

Plaintiffs also ask the Court to follow *Robinhood*, notwithstanding that the claims, facts, and legal arguments in that case differed.  Plaintiffs here were paid at the disclosed rate, as determined by the disclosed non-party.  Not so in *Robinhood*, where "the amount of interest received" bore "almost no relation[ship] to the amount of interest" set by the non-party banks. *Robinhood*, 2025 WL 1322716, at *4 (N.D. Cal. Apr. 28, 2025).  Unlike JPMS, Robinhood would "increase the amount of fees it extracts" to prevent customers from earning returns at the determined rate.  *Id.*  Further, no breach of contract claim was asserted in *Robinhood*, and the misrepresentation-based claims asserted there were brought under California law.

II.   **PLAINTIFFS CANNOT PROCEED ON THEIR FIDUCIARY CLAIM.**

A.    **The Fiduciary Claim Impermissibly Duplicates the Contract Claim.**

The Court should dismiss this claim because it merely dresses up and duplicates Plaintiffs' contract claim. As Plaintiffs' authority illustrates, a fiduciary claim and contract claim can coexist only if there is some "broader, ongoing fiduciary relationship…beyond the four corners of the Agreements." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 321222, at *9, 12 (S.D.N.Y. Feb. 9, 2009).  But here, Plaintiffs have confirmed repeatedly that the alleged

8

fiduciary duties arise from "the language of JPMorgan's contracts."  Opp.17; *see also* Opp.10-11 (reciting alleged "**contractual obligations**" creating fiduciary duties); Opp.22 (declining to assert fiduciary claims under Reg BI and other authorities); ECF No. 73 at 1 (citing Compl. ¶¶90-95).  Ignoring their own allegations, Plaintiffs insist that the fiduciary and contract claims are "based on distinct legal theories and facts."  Opp.23-24.  However, no such distinct legal theories or facts can be found in the pleading.  Both claims rely on the same contracts, challenge the same practice, involve the same alleged underpayments, and seek redress of that injury through additional payment.  *See* Opp.23-24.  The fiduciary claim is thus duplicative and should be dismissed.  *Celle v. Barclays Bank P.L.C.*, 851 N.Y.S.2d 500, 501 (1st Dept. 2008).

**B.    The Agreements Do Not Create Any Fiduciary Duty Regarding the Interest Rate.**

Plaintiffs cannot point to anything in the agreements (or elsewhere) that established any fiduciary duty vis-à-vis the interest rate.  As Defendants have explained, Mot.19-21, courts routinely decline to find that brokers owe nondiscretionary customers (like Plaintiffs) any fiduciary duty with respect to the sweep rate.  *E.g.*, *DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605, at *31 (S.D.N.Y. July 27, 2009).  Indeed, Plaintiffs' oft-cited *Robinhood* case found exactly that.  *See* 2025 WL 1322716, at *1-2.  Moreover, Plaintiffs' agreements explicitly *disclaimed* that JPMS acted "as a fiduciary under any federal laws, rules, or regulations, for its brokerage customers except in limited circumstances."  Opp.23.  And JPMS disclosed that the interest rate would be set by non-party Chase Bank, thus disclaiming any responsibility to procure a different rate.[6]

---

[6]  Plaintiffs argue that JPMS cannot disclaim its fiduciary duty.  Opp.23.  But Plaintiffs' own authority demonstrates that "contractual disclaimers of fiduciary duty are enforceable" where, as here, they are "sufficiently explicit."  *Veleron Holding, B.V. v. Morgan Stanley,* 117 F. Supp. 3d 404, 451-52 (S.D.N.Y. 2015).

Plaintiffs nonetheless argue that JPMS became a fiduciary by promising to act as their agent for "all transactions" in the sweep program, which Plaintiffs claim goes beyond "moving funds" to and from Chase Bank. Opp.18. But "transactions," as understood in this context, involve only the making of trades or moving of funds at a nondiscretionary customer's request. *See, e.g.*, *de Kwiatkowski v. Bear*, *Stearns & Co.*, 306 F.3d 1293, 1302 (2d Cir. 2002) (generally limiting fiduciary duty to carrying out "each transaction," not broad account-related activity). And that is how Plaintiffs' contracts referred to "transactions" as well. The sentence immediately following the "all transactions" language explains its meaning: Chase Bank "will not accept any instructions concerning these bank deposits unless the instructions are transmitted by JPMS." Ex.G. at 1. Such narrow agency—acting as a customer's mouthpiece to transmit their instructions about their funds—simply does not implicate the interest rate.

Plaintiffs fare no better by relying on JPMS's alleged "*de facto* control and dominance." Opp.19. As Plaintiffs admit, whether a fiduciary duty exists turns on "**the specific practices…in dispute**." Opp.18. Nothing in Plaintiffs' agreements stated that JPMS exercises any control over the interest rates—indeed, the contracts expressly disclosed that a non-party set the rate.

Last, Plaintiffs resort to out-of-context cases that do not address a broker's relationship with nondiscretionary customers. Plaintiffs' lead cases involve agents who negotiated on behalf of clients but withheld the negotiated instruments to benefit themselves. *Sokoloff v. Harriman Ests. Dev. Corp.*, 96 N.Y.2d 409, 416 (2001); *Carlton Grp., Ltd. v. Mirabella SG SpA*, 2018 WL 3520494, at *9 (S.D.N.Y. July 19, 2018). By sharp contrast, Plaintiffs here concede they received the disclosed rate. *See* Compl. ¶152. Because that was all Plaintiffs were owed, their fiduciary claim must be dismissed.

10

### III.  PLAINTIFFS FAIL TO STATE AN IMPLIED COVENANT CLAIM.

Plaintiffs try to preserve their duplicative implied covenant claim by arguing that it should survive as an alternative to the contract claim because "there is a dispute over the meaning of the contract's express terms.'" Opp.16 (quoting *Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018)).  But this alternative-pleading approach applies only when the contract itself is "ambiguous."  *See Spinelli*, 903 F.3d at 201.  For ambiguous contracts, it would be unclear whether a party had a claim for breach of an express term, an implied term, or no term at all.  But here, the contractual language is clear.  *Supra* Part.I.  Plaintiffs thus cannot "avoid the express terms of the contract by relying on the implied covenant." *Spinelli*, 903 F.3d at 206 n.9.[7]

### IV.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM CANNOT STAND.

Likewise, Plaintiffs' unjust enrichment claim fails because the parties' clear contract terms govern their dispute.  Plaintiffs argue that they can plead this claim "in the alternative" since the parties dispute the "existence, scope, or enforceability of the putative contract." Opp.24.  That misunderstands the parties' disagreement: Plaintiffs argue that JPMS promised to pay certain rates, while Defendants demonstrate that JPMS disclaimed that role.  But no party disputes that the contracts exist and govern this "subject matter," which means the unjust enrichment claim "is barred." *Churchill Real Est. Holdings LLC v. CBCS Washington St. LP*, 95 N.Y.S.3d 526 (1st Dept. 2019); *see Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586-88 (2d Cir. 2006) (similar).

---

[7] Although Plaintiffs again rely on *Robinhood*, that case did not involve any contract claim for the implied covenant claim to duplicate.  Opp.15, 4 n.3.  Equally irrelevant are the cases that limit a ***contracting party's*** discretion since the parties here delegated rate-setting discretion to a non-party.  *Contra* Opp.15.

## V.  PLAINTIFFS STATE NO CLAIM AGAINST JPMORGAN CHASE & CO.

Though Plaintiffs insist that JPMorgan Chase & Co. should remain in this case, they offer no response to Defendants' argument that they lack any relationship with the holding company. Opp.25.  Instead, Plaintiffs argue that the holding company can be found liable as "JPMS's corporate parent." *Id.*  But Plaintiffs' own authority confirms that a parent "cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *Harte v. Ocwen Fin. Corp.*, 2016 WL 1275045, at *4 (E.D.N.Y. Mar. 31, 2016); Opp.25.  Nor have Plaintiffs alleged any additional facts that would allow it to impute liability to JPMorgan Chase & Co, which therefore must be dismissed from this case.  Mot.26-27.

## CONCLUSION

Plaintiffs' Complaint should be dismissed in its entirety.

Dated: June 25, 2025                          */s/ Jayant W. Tambe*

Jayant W. Tambe
Laura Washington Sawyer
Céalagh P. Fitzpatrick
Meredith Christian
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
jtambe@jonesday.com
lwsawyer@jonesday.com
cfitzpatrick@jonesday.com
mchristian@jonesday.com

*Counsel for Defendants J.P. Morgan Securities LLC and JPMorgan Chase & Co.*

12

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)**

This Reply complies with the word limits of Local Civil Rule 7.1(c) because, excluding the parts of the Motion exempted by Local Civil Rule 7.1(c), it contains 3,485 words, as determined by the word-count function of Microsoft Word.

Dated: June 25, 2025

/s/ Jayant W. Tambe

Jayant W. Tambe
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
jtambe@jonesday.com

*Counsel for Defendants*
*J.P. Morgan Securities LLC and*
*JPMorgan Chase & Co.*

## CERTIFICATE OF SERVICE

I certify that on June 25, 2025 I caused the foregoing Reply in Support of Defendants' Motion to Dismiss the Consolidated Complaint to be served upon all counsel of record via electronic service pursuant to Federal Rule of Civil Procedure Rule 5(b)(2)(E).

Dated: June 25, 2025                    */s/ Jayant W. Tambe*

Jayant W. Tambe
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
jtambe@jonesday.com

*Counsel for Defendants*
*J.P. Morgan Securities LLC and*
*JPMorgan Chase & Co.*