UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
                                                             :          24 Civ. 6404 (LGS)
*In re JPMorgan Chase Cash Sweep Program*                    :
                                                             :          **OPINION & ORDER**
                                                             :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Dan Bodea (individually and as trustee of a trust) and Richard W. Quigley Jr.
bring this action on behalf of themselves and a putative class (the "Class") of participants in the
JP Morgan Cash Sweep Programs[1] ("Cash Sweep Program").  Defendants are JPMorgan Chase
& Co. ("JPMC Holding") and J.P. Morgan Securities LLC ("JPMS").  Plaintiffs allege that
Defendants breached contractual and common law duties relating to the management of
uninvested cash held in Plaintiffs' brokerage and retirement accounts with Defendants.
Defendants move to dismiss the Consolidated Class Action Complaint (the "Complaint")
pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the motion is
granted in part and denied in part.

## I.    BACKGROUND

The following facts are taken from the Complaint and documents integral to the
Complaint, including contractual documents Defendants filed by attorney declaration in support
of the motion to dismiss.  *See Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025).

### A.  The Cash Sweep Program

Defendant JPMS is a broker-dealer, investment advisor, and wholly owned subsidiary of
Defendant JPMC Holding, a financial services holding company.  Plaintiffs hold full-service and

---

[1] The programs at issue are the Chase Deposit Sweep - IRA (Sweep Symbol: QDERQ),
JPMorgan Deposit Sweep - IRA (Sweep Symbol: QCERQ), Chase Deposit Sweep (Sweep
Symbol: QACDS) and JPMorgan Deposit Sweep (Sweep Symbol: QAJDS).

self-directed brokerage accounts and individual retirement accounts ("IRAs") with Defendant

JPMS and were enrolled in the Cash Sweep Program.

This case challenges the interest rate applied to JPMS client cash balances in the Cash

Sweep Program.  Plaintiffs were automatically enrolled in the Cash Sweep Program.  Through

this program, Plaintiffs' uninvested cash (for example, money from dividends, interest or

securities sales proceeds) was swept into an interest-bearing bank deposit account held by non-

party JPMorgan Chase Bank N.A. ("JPMorgan Chase Bank"), which is also a wholly owned

subsidiary of Defendant JPMC Holding.  For brokerage accounts and non-managed IRA

accounts, Defendants did not offer Plaintiffs an alternative cash sweep option.[2]

From August 2018 to June 2020, Plaintiffs' cash sweep accounts paid .03% interest, and

from June 2020 to the filing of the Complaint, these accounts paid .01% interest.  During that

period, prevailing market interest rates fluctuated significantly -- for example, the federal funds

rate (the rate at which banks lend to one another) fluctuated from close to zero percent to a high

of 5.33%.  The discrepancy between interest rates paid to Plaintiffs and prevailing market

interest rates enabled Defendants and their affiliates to earn significant net interest income from

Plaintiffs' uninvested cash.

**B.  Terms of the Cash Sweep Program Applicable to All Accounts**

Numerous documents govern Plaintiffs' accounts with JPMS, including documents

contained in an Investment Account Agreement and Disclosures Booklet (the "Booklet").  The

Booklet states that it "is broken down into two main parts": (1) "Agreements," which includes

agreements governing customers' accounts, and (2) "Disclosures," which "contains important

---

[2] The Complaint does not appear to assert claims on behalf of managed IRA accountholders. Specifically, the Complaint does not clearly state that Plaintiffs held managed IRA accounts or that managed IRA accountholders are within the class definitions, which reference "JPMorgan's Cash Sweep Programs."  The Complaint defines that term to include programs with different sweep symbols than the programs available to managed or advisory accountholders.  The Complaint implies that managed IRA accountholders were automatically enrolled in the Cash Sweep Program, but had the option to select an alternative that paid a higher rate of interest.

2

information relating to" certain aspects of customers' accounts.  The Booklet documents relevant to this dispute include:

- General Terms and Conditions;

- The Brokerage Account Agreement;

- JPMorgan Chase Deposit Account ("Deposit Account Agreement");

- J.P. Morgan Securities LLC Traditional IRA Custodial Agreement ("Traditional IRA Agreement") and

- J.P. Morgan Securities LLC Roth IRA Custodial Agreement (together with the Traditional IRA Agreement, the "IRA Agreements").

The Brokerage Account Agreement states that JPMS acts "as a broker-dealer and custodian" for Plaintiffs and that, unless Plaintiffs "select an available alternative, [Plaintiffs] authorize JPMS Chase Deposit Account for [their] sweep option."

The Deposit Account Agreement governs the terms of the Cash Sweep Program.  The Deposit Account Agreement states, "The interest rate paid on Deposit Account balances will vary based on business and economic conditions and whether you have the Chase Deposit Sweep or the J.P. Morgan Deposit Sweep.  The rate is reset periodically at the discretion of [non-party JPMorgan Chase Bank]."  The Deposit Account Agreement further states that "JPMS acts as exclusive custodian and agent with respect to all transactions relating to the Deposit Account feature of customers' JPMS accounts.  Accordingly, [JPMorgan Chase Bank] will not accept any instructions concerning these bank deposits unless the instructions are transmitted by JPMS"; "[JPMorgan Chase Bank] or JPMS, in its discretion, may modify the terms, conditions and procedures relating to the Deposit Account"; "JPMS may amend the features of the Deposit Account by adding or removing depository institutions" and "JPMS may, in its sole discretion and without notice, terminate your use of the Deposit Account."

**C. Terms of the Cash Sweep Program Applicable to Individual Retirement Accounts**

Plaintiffs are traditional and Roth IRA accountholders.  The Booklet and Deposit Account Agreement also govern deposit accounts held by IRA accountholders.  Traditional and Roth IRAs are further subject to agreements stating that JPMS "may invest any uninvested cash held in the [IRA or Roth IRA] in bank savings instruments or bank deposits bearing a reasonable rate of interest in [JPMorgan Chase Bank's] banks so long as (to the extent necessary) such investment is in compliance with" relevant provisions of the tax code.  The Brokerage Account Agreement explains that JPMS "make[s] investment recommendations to [Plaintiffs] regarding your . . . individual retirement account as a fiduciary . . . .  The way we make money or otherwise are compensated creates some conflicts with your financial interests, so we operate under a special rule that requires us to act in your best interest and not put our interest ahead of yours."  The IRA Agreements further state that JPMS "shall not be liable for any loss of any kind that may result from any action taken by it in accordance with the directions of the Depositor."

**D. Other Contractual Provisions**

JPMS also provides clients with a Client Relationship Summary and a Guide to Investment Services and Brokerage Products (the "Guide").  The Client Relationship Summary states: "When we provide you with a recommendation as your broker-dealer or act as your investment adviser, we must act in your best interest and not put our interest ahead of yours."  The Guide also states that for full-service brokerage accounts, accountholders are able to "work with an advisor who can provide goals-based advice, guidance and help with specific investment needs," and that JPMS "generally trade[s] in an agency capacity where applicable" and is obligated to "act in [the accountholder's] best interest at the time [JPMS] make[s] a securities recommendation."  The Brokerage Account Agreement similarly states that "[i]n providing services under this Agreement, JPMS is acting as a broker-dealer and custodian . . . .  When acting in a brokerage capacity for certain clients, JPMS will make investment recommendations

4

that are in your best interest, based on the information you have shared with JPMS about you and your preferences."

The Booklet's General Terms and Conditions states that Plaintiffs "agree to release and forever discharge JPMS" and "its affiliates . . . from all [liabilities] incurred or sustained by a Released Party and caused directly or indirectly by one or more of the released parties following instructions by you . . . or any other conditions beyond the Released Parties' control."

## II.    STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider conclusory allegations or legal conclusions couched as factual allegations.  *See Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[3]  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] . . . claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).

Plaintiffs bring their claims under state law.  New York law governs based on the parties' contracts, which contain a New York choice-of-law provision, and because the parties' submissions assume that it does.  *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law.").

---

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

## III.   DISCUSSION

The Complaint asserts the following claims on behalf of Plaintiffs and the Class: breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and unjust enrichment.  The Complaint also asserts a separate breach of contract claim on behalf of a subclass of clients who held an IRA and participated in the Cash Sweep Program (the "IRA Subclass").  For the reasons below, the motion to dismiss is granted in part and denied in part.  All claims against JPMC Holding are dismissed.  The claims against JPMS asserting breach of contract based on alleged promises to act in Plaintiffs' best interests, breach of fiduciary duty and unjust enrichment are dismissed.  The remaining claims survive.

### A.  Contract Claims (Claims I, II and III)

On a motion to dismiss, courts "are not obliged to accept the allegations of the complaint as to how to construe" documents integral to the complaint, such as the parties' contracts, but any contractual ambiguities should be resolved in favor of the plaintiff.  *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *accord Donoghue v. Smith*, No. 21 Civ. 4811, 2022 WL 1225338, at *3 (S.D.N.Y. April 26, 2022).

#### 1.  Threshold Issues

##### a.  Contract Claims Against JPMC Holding

The Complaint fails to state contract claims against Defendant JPMC Holding because the Complaint does not allege that Plaintiffs have any contractual relationship with that entity, and the Complaint does not allege sufficient facts to show that JPMC Holding is liable as the parent of JPMS.

"New York law disfavors disregard of the corporate form."  *Sutton 58 Assocs. LLC v. Pilevsky*, 137 N.Y.S.3d 359, 362 (1st Dep't 2020).  Under New York law, "a parent corporation generally cannot be held liable for the debts of its wholly owned subsidiary, nor can it be bound by the contract of that subsidiary," unless (1) "the parent manifests an intent to be bound by the

contract," or (2) the corporate veil may be pierced. *World Wide Packaging, LLC v. Cargo Cosms., LLC*, 144 N.Y.S.3d 41, 41 (1st Dep't 2021). Courts applying New York law also have held a parent liable when a subsidiary acts as an agent for the parent and enters an agreement with actual or apparent authority to bind the parent. *Harte v. Ocwen Fin. Corp.*, No. 13 Civ. 5410, 2016 WL 1275045, at *4 (E.D.N.Y. Mar. 31, 2016) (New York law).

The Complaint attempts to allege that Defendant JPMC Holding is liable on Plaintiffs' contract claims based on the intent theory and the agency theory. Plaintiffs do not advance a veil-piercing theory of liability, nor does the Complaint contain allegations necessary to pierce the corporate veil -- i.e., facts showing misuse of the corporate form to commit fraud or injustice. *See Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203-04 (N.Y. 2018).

### i.    Intent Theory

The Complaint does not allege sufficient facts to support JPMC Holding's liability based on the intent theory. A parent's intent to be bound may be found when a parent's "overall conduct reflects its intent to be bound." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 285 (S.D.N.Y. 2023) (New York law). Such "intent is inferable from the parent's participation in the negotiation of the contract, or if the subsidiary is a dummy for the parent, or if the subsidiary is controlled by the parent for the parent's own purposes." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) (quoting *Horsehead Indus., Inc. v. Metallgesellschaft AG*, 657 N.Y.S.2d 632, 633 (1st Dep't 1997)). Parent liability is insufficiently pleaded under this theory when a complaint alleges no facts from which the parent's intent can be inferred. *See World Wide Packaging*, 144 N.Y.S.3d at 41-42 (holding parent liability insufficiently pleaded when complaint lacked allegations that the parent "directly participated or micro-managed each transaction" or "acknowledged that it was the actual party in interest").

The Complaint's breach of contract claims assert joint and several liability on the part of JPMS and JPMC Holding, alleging that the latter "knowingly encouraged, directed, and participated in JPMS's breaches of contracts and knowingly received the benefits thereof." The alleged facts underlying this general allegation are insufficient. The Complaint alleges that JPMC Holding "controls what interest rates [JPMorgan Chase Bank] pays to Cash Sweep Program clients." This allegation is conclusory and without more does not withstand a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[M]ere conclusory statements[] do not suffice."); *Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701, 710-711 (S.D.N.Y. 2025) (dismissing claims against parent company and affiliate in cash sweep litigation based on conclusory allegations); *see also In re Wells Fargo Cash Sweep Litig.*, No. 24 Civ. 4616, 2025 WL 1785315, at *4 (N.D. Cal. June 27, 2025) (same).

Plaintiffs point to other allegations to support the parent company's liability, but these allegations are lacking because they merely identify JPMC Holding as a holding company that owns JPMS. "[A] parent corporation may not be held liable for the contracts [and other acts] of its subsidiary solely because of stock ownership." *Maki v. Travelers Companies, Inc.*, 44 N.Y.S.3d 220, 223 (3d Dep't 2016); *see Chanel, Inc. v. WGACA, LLC*, No. 18 Civ. 2253, 2018 WL 4440507, at *5 (S.D.N.Y. Sept. 14, 2018) (stating that, under New York law, "mere knowledge and control of the company's operations is insufficient" to hold owners liable). The Booklet states that JPMS and JPMorgan Chase Bank, which held Plaintiffs' deposit accounts, "are affiliated companies under the common control of [JPMC Holding]." The Complaint further alleges that JPMC Holding "is a holding company that conducts business through its subsidiaries," and is the "ultimate beneficiary" of the arrangement between JPMS and JPMorgan Chase. These allegations do not suffice for JPMC Holding's liability.

Plaintiffs rely on *Mehlman v. Ameriprise Financial Inc.*, No. 24 Civ. 3018, 2025 WL 2403252 (D. Minn. August 19, 2025), in support of JPMC Holding's liability. As a District

Court decision, *Mehlman* is not binding here. The decision also is inapt because it applies Minnesota law rather than New York law, and because the Complaint in *Mehlman* included critical allegations that are lacking here. In *Mehlman*, the court held the complaint adequately alleged parent company liability on claims under Minnesota law relating to a similar cash sweep program. *Id.* at \*7. Even assuming that Minnesota law is the same as New York law, the *Mehlman* complaint alleged statements by the parent company's CEO about the parent's "participation, control over, and benefits from the Bank Sweep Programs," *id.*, which is more than the Complaint alleges here. The Complaint's contract claims against Defendant JPMC Holding are insufficiently pleaded to support liability on an intent theory.

### ii.    Agency Theory

The Complaint alleges insufficient facts to support contract claims against JPMC Holding based on an agency theory of parent liability. Under an agency theory, "the claim against the parent is premised on the view that the subsidiary had authority to act, and was in fact acting, on the parent's behalf -- that is, in the name of the parent." *Harte*, 2016 WL 1275045, at \*4 (quoting *Sahu v. Union Carbide Corp.*, No. 04 Civ. 8825, 2012 WL 2422757, at \*16 (S.D.N.Y. June 26, 2012), *aff'd*, 528 F. App'x 96 (2d Cir. 2013)).

Here, the Complaint's only agency allegation is that "JPMS is a wholly owned subsidiary and agent of [JPMC Holding] and committed breaches of contracts within the scope of its corporate principal-agent relationship." This conclusory allegation is unsupported by any facts to suggest an agency relationship, or that JPMS had actual or apparent authority to bind JPMC Holding on the contracts. Unlike in *Harte*, for example, the Complaint does not allege overlap between operation and management or identify any contract provision imposing obligations on JPMC Holding. *Id.* at \*6. The contract claims against JPMC Holding are insufficiently pleaded and therefore dismissed.

### b.  Plaintiffs' Performance

Defendants argue that the contract claims should be dismissed because the Complaint fails to allege that Plaintiffs "performed their material obligations under the brokerage agreements."  The Complaint adequately alleges Plaintiffs' performance under the relevant agreements.  Under New York law, a plaintiff's performance of its contract obligations is essential to recover for a breach of that contract.  *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022); *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (New York law).  The Complaint alleges that Plaintiffs signed the relevant account agreements and maintained their accounts.  Based on the terms of the parties' agreements and construing the allegations in the light most favorable to Plaintiffs, these allegations suffice to allege performance at this stage.

Defendants contend that dismissal is warranted because the Brokerage Account Agreement specifically obligated Plaintiffs to "review" and "report errors" in periodic account statements "to JPMS," and the Complaint does not allege that Plaintiffs reported the complained-of interest rates to JPMS.  This argument fails because the Complaint does not allege that Defendants made an "error" in paying interest on Plaintiffs' uninvested cash, but instead alleges that Defendants set interest rates divorced from market conditions "to enrich [themselves] at [their] clients' expense."  The Complaint adequately alleges Plaintiffs' performance.

### c.  Release

Defendants argue that Plaintiffs have released Defendants from liability on all claims. Defendants point to two releases, one in the Booklet's General Terms and Conditions, and the other in the IRA Agreements.  Dismissal is inappropriate on these grounds because these releases do not clearly and unambiguously cover Plaintiffs' claims.  *See Subaru*, 425 F.3d, at 122 (stating that any contractual ambiguities must be resolved in favor of the plaintiff on a motion to dismiss); *Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 Civ. 5607, 2016 WL

10

4939370, at *4 (S.D.N.Y. Sept. 12, 2016) (construing release in favor of plaintiffs on motion to dismiss).

The first release in the Booklet states that Plaintiffs "agree to release and forever discharge JPMS" and "its affiliates . . . from all [liabilities] incurred or sustained by a Released Party and caused directly or indirectly by one or more of the released parties following instructions by you . . . or any other conditions beyond the Released Parties' control." Construing the provision in favor of Plaintiffs as the non-moving party, the release is inapplicable. It is not alleged that JPMS was following Plaintiffs' instructions in selecting JPMorgan Chase Bank deposit accounts. To the contrary, the Complaint alleges that those accounts are the only option for the Cash Sweep Program. The selection of those accounts is also not "beyond [JPMS's] control" because the Complaint alleges that JPMS "effectively controls" interest rates by selecting JPMorgan Chase Bank deposit accounts. Construing the agreement in favor of Plaintiffs, as required on a motion to dismiss, the first release does not foreclose the contract claims at this stage. *See Subaru Distributors Corp.*, 425 F.3d at 122; *Ortho-Clinical Diagnostics Bermuda Co*, 2016 WL 4939370, at *4.

The second release in the IRA Agreements similarly states that JPMS "shall not be liable for any loss of any kind that may result from any action taken by it in accordance with the directions of the Depositor." This release also does not apply, because the Complaint does not allege that JPMS was following Plaintiffs' instructions in selecting JPMorgan Chase Bank deposit accounts. Construing the provision in favor of Plaintiffs, and accepting the facts as alleged in the Complaint, the releases in the parties' agreements do not bar Plaintiffs' claims on a motion to dismiss. *See Subaru Distributors Corp.*, 425 F.3d at 122; *Ortho-Clinical Diagnostics Bermuda Co*, 2016 WL 4939370, at *4.

### 2. Promise to Vary Interest Rates (Claim I)

The first cause of action, on behalf of Plaintiffs and the Class, asserts that Defendants breached the provision in the Deposit Account Agreement and other documents that "[t]he interest rate paid on Deposit Account balances will vary based on business and economic conditions and . . . is reset periodically at the discretion of [non-party JPMorgan Chase Bank]." The Complaint adequately alleges that JPMS agreed that the interest rates on swept cash "will vary based on business and economic conditions," and that JPMS breached that obligation because the interest rates did not vary based on these conditions. *See Liberty Cap. Grp.*, 802 F. Supp. 3d at 713-714 (concluding that complaint adequately alleged breach of similar contract language under New York law).

Defendants argue that this language imposes no obligation on JPMS and, instead, is a mere risk disclosure notifying Plaintiffs that a third party, JPMS affiliate JPMorgan Chase Bank, has discretion to set interest rates on swept cash. Defendants' arguments are unpersuasive at this stage.

First, the Deposit Account Agreement plausibly binds JPMS, notwithstanding that it appears in the section of the Booklet titled "Disclosures." The Booklet's General Terms and Conditions states that "the Booklet and other Important Account Documents represent the entire agreement and understanding between you and JPMS concerning your Accounts." The Deposit Account Agreement states that "[s]election of the Deposit Account for the sweep of available cash in [a customer's] account will be deemed [the customer's] acknowledgment and consent to the features and terms of the Deposit Account." Among those "terms" is the statement that interest rates "will vary based on business and economic conditions." Based on the foregoing, the Complaint plausibly alleges that the Deposit Account Agreement binds JPMS.

Second, Defendants argue that the specific language that interest rates "will vary" is a risk disclosure, not an enforceable promise. Reading the agreement in favor of Plaintiffs, this

argument is unpersuasive.  At least one court applying New York law held that similar contractual language constitutes an enforceable promise.  *Mirkin v. Viridian Energy, Inc.*, No. 15 Civ. 1057, 2016 WL 3661106, at *8 (D. Conn. July 5, 2016) (under New York law, plaintiff stated claim for breach of contract provision stating that "price may fluctuate . . . based on wholesale market conditions," *id.* at *3).  Defendants' cited case is distinguishable.  In *Baltia Air Lines, Inc. v. CIBC Oppenheimer Corp.*, 709 N.Y.S.2d 54, 55 (1st Dep't 2000), the court affirmed dismissal of the claim that the defendant had an obligation to clear transactions as part of the plaintiff's initial public offering.  *Id.* at 55-56.  The claim failed because the contract made no representations that defendant would execute any transactions.  *Id.* at 56.  Here, in contrast, the Deposit Account Agreement contains language that is plausibly read as a promise from JPMS that the interest rates on swept cash "will vary based on business and economic conditions."

Third, Defendants argue that the Deposit Account Agreement vests rate-setting discretion in JPMorgan Chase Bank, and that Plaintiffs' interpretation would "render the . . . [contractual] language of discretion meaningless."  This argument is also unpersuasive at this stage.  The agreements themselves state that the rates "will vary based on business and economic conditions," thereby limiting discretionary authority to set rates.  A viable contract claim exists when a contract provides for discretion, but the defendant allegedly exceeded the contractual bounds of that discretion.  *See Mirkin*, 2016 WL 3661106 at *8; *cf. Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 412 (2d Cir. 2023) (dismissing breach of contract claims under New York law when defendant "pointed to several factors expressly listed in the Agreement" that accounted for prices set in defendant's discretion).  This case is unlike those in which the parties' contracts imposed no limits on the exercise of discretion.  *See, e.g.*, *Hunter v. Deutsche Bank AG*, 866 N.Y.S.2d 670, 670-71 (1st Dep't 2008) (rejecting claim for breach of employment contract provision "making bonus awards solely and completely a matter of" employer's discretion).  It makes no difference that the contract states that JPMorgan Chase Bank, as

13

opposed to JPMS, has discretion to set rates, because the contract also states that the rates "will vary based on business and economic conditions."  The Complaint plausibly alleges a breach of that contractual provision.

### 3.  Promise to Provide a Reasonable Interest Rate - IRA Plaintiffs (Claim II)

The second cause of action, on behalf of Plaintiffs and the IRA Subclass, alleges that Defendants breached their contractual obligation to the IRA Subclass to "invest any uninvested cash held in the IRA in bank savings instruments or bank deposits bearing a reasonable rate of interest."  The motion to dismiss this claim is denied because, construing the provision in favor of Plaintiffs, the Complaint plausibly alleges that JPMS breached its promise to provide "a reasonable rate of interest" under the meaning of the contract.

Defendants' arguments otherwise are unpersuasive.  First, Defendants argue that this provision does not impose obligations on JPMorgan because the agreement states that Plaintiffs "authorize[] the use of savings instruments offered by [JPMorgan Chase Bank]; and *without limiting the generality of the foregoing*, unless otherwise directed by the Depositor, and agreed upon by Custodian, the Custodian may invest any uninvested cash held in the IRA in bank savings instruments or bank deposits bearing a reasonable rate of interest" (emphasis added).  Defendants argue that, because of the italicized language, they could sweep Plaintiffs' funds to any savings instruments offered by JP Morgan Chase Bank, regardless of the interest rate, and that the remainder of the sentence has no meaning or significance except as boilerplate required for certain tax treatment.

Construing the agreement in favor of Plaintiffs, as is required at this stage, the provision could be read differently.  It appears under the heading, "Brokerage Commissions; Use of JPMorgan Chase Bank, N.A. Products" and thus appears to deal with self-interested transactions. The first sentence, not quoted above, states that JPMS can charge and earn brokerage commissions on securities transactions in the account.  The remainder of the paragraph, largely

14

quoted above, can be read to say that JPMS may invest any uninvested cash in savings instruments, expressly including those issued by JPMorgan Chase Bank, or in bank deposits provided they bear a reasonable rate of interest -- i.e., proprietary transactions from which JPMS or its affiliates might benefit.  This interpretation does not foreclose Plaintiff's claims.  *See Subaru*, 425 F.3d, at 122 (stating that any contractual ambiguities must be resolved in favor of the plaintiff on a motion to dismiss).

Second, Defendants argue that the IRA Agreements' "reasonable rate" provision is not a promise, but a mandated disclosure of a regulatory requirement.  Defendants do not explain why a mandated disclosure cannot also create a contractual obligation, and their cited authority does not support this proposition.  *See O'Connor v. Henkel Corp.*, No. 14 Civ. 5547, 2015 WL 5922183, at *10 (E.D.N.Y. Sept. 22, 2015) (holding that state law claims based on federally mandated food labeling requirements are preempted by federal law); *Gurfein v. Ameritrade Inc.*, 312 F.App'x 410, 413 (2d Cir. 2009) (summary order) (holding that provisions requiring compliance with general "rules and regulations" do not support a claim for breach when a specific regulation is violated).

Third, and relatedly, Defendants argue that *Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003), bars this claim because the Internal Revenue Code, which Defendants contend is the source of the "reasonable rate" language, does not create a private right of action.  In *Grochowski*, the Second Circuit held that employees who were not parties to a contract could not sue their employer for breach of a contractual provision requiring wages to be set in compliance with federal mandates.  *Id.* at 86.  The court held that the plaintiffs' claims were barred because the federal statute did not provide a private right of action, and the plaintiffs could not privately enforce that federal statute through a contract claim.  *Id.*  Here, in contrast, the IRA Agreements do not directly tie the requirement that sweep accounts "bear[] a reasonable rate of interest" to the Internal Revenue Code or any other applicable law, but instead state that

15

JPMS may sweep cash into accounts "bearing a reasonable rate of interest *so long as (to the extent necessary)* such investment is in compliance with" applicable law (emphasis added). Defendants' cited cases are unlike the situation here, where Plaintiffs seek to enforce a specific contractual term, because those cases either (1) involve plaintiffs seeking to enforce contract provisions generally providing that defendants must comply with applicable law[4] or (2) do not involve claims brought under an express contractual provision.[5]

Finally, Defendants argue that Plaintiffs' reading contradicts several other contractual terms. These arguments fail because, construing the allegations and documents in favor of Plaintiffs, all terms Defendants identify can be read in concert with Plaintiffs' interpretation.

First, Defendants argue that the "reasonable rate" term is superseded by the "agreed-to rate in the agreements." Specifically, Defendants argue that the parties' agreements distinguish the rates paid to Plaintiffs from a higher rate available to customers who pay an advisory fee to JPMS, and that the Deposit Account Agreement provides a weblink to the current interest rates for advisory and non-advisory customers. Construing the agreements in favor of Plaintiffs, there is no inconsistency between Plaintiffs' interpretation and the Deposit Account Agreement's disclosed interest rates. Neither the IRA Agreements nor the Deposit Account Agreement ties the reasonableness of an interest rate to whether a customer also pays JPMS an advisory fee. Similarly, that the Deposit Account Agreement contains a link to then-current interest rates does not obviate JPMS's obligation to pay a "reasonable rate." *See Liberty Cap. Grp.*, 802 F. Supp.

---

[4] *See Broder v. Cablevision Sys. Corp.* 329 F. Supp. 2d 551, 558 (S.D.N.Y. 2004), *aff'd*, 418 F.3d 187 (2d Cir. 2005) (dismissing claim for breach of provision providing that rates "are subject to change in accordance with applicable law"); *Gunther v. Cap. One, N.A.*, 703 F. Supp. 2d 264, 270 (E.D.N.Y. 2010) (dismissing claim for breach of provision providing that terms and conditions "are subject to all applicable state and federal laws and regulations").

[5] *See Joseph v. JetBlue Airways Corp.*, No. 11 Civ. 1387, 2012 WL 1204070, at *6 (N.D.N.Y. Apr. 11, 2012) (dismissing implied covenant claim for unfair and deceptive practices otherwise enforceable only by federal government); *Valelly v. Merrill Lynch*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020) (dismissing tort claims); *Acevado v. Citibank, N.A.*, No. 10 Civ. 8030, 2012 WL 996902, at *14 (S.D.N.Y. Mar. 23, 2012) (dismissing unjust enrichment claims).

3d at 713 (rejecting argument that contractual disclosure of rate obviates obligation to vary rates).

Second, Defendants argue that Plaintiffs' interpretation contradicts the Brokerage Account Agreement's provision that, "[u]nless otherwise agreed to in writing, JPMS does not have any discretionary authority or obligation to review or to make recommendations" relating to Plaintiffs' deposit accounts. This argument is unpersuasive because the Complaint alleges that Defendants did "otherwise agree[] in writing" to "invest any uninvested cash" in instruments "bearing a reasonable rate of interest" through the IRA Agreements.

Third and finally, contractual provisions stating that Plaintiffs should "compare the terms" and "rate of return" of cash sweep deposit accounts with other deposit accounts do not conflict with the agreements' representations that interest rates on Plaintiffs' swept cash must be "reasonable." Defendants' motion is accordingly denied as to Plaintiffs' claims that JPMS breached the "reasonable rate" provision of the IRA Agreements.

### 4. Promises to Act in Plaintiffs' Best Interest (Claims I and II)

The Complaint alleges that Defendants made various promises to "act in [Plaintiffs'] best interest and not put our interest ahead of yours" when making "recommendations." The First and Second Claims assert a breach of these promises. As discussed below regarding the breach of fiduciary duty claim, the Complaint does not allege that Defendants made any "recommendations" with respect to the Cash Sweep Program. Consequently, to the extent the contract claims are based on these best-interest promises, those claims are dismissed.

### 5. Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim III)

The third cause of action, on behalf of Plaintiffs and the Class, asserts that Defendants violated the implied covenant of good faith and fair dealing in sweeping Plaintiffs' cash into accounts bearing low rates of interest. Defendants argue that the implied covenant claim should be dismissed as duplicative of the express contract claims. This claim survives.

17

Under New York law, "implicit in every contract is a covenant of good faith and fair dealing . . . which encompasses any promises that a reasonable promisee would understand to be included." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (quoting *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995)). When a contract states that one party has discretion, "this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Cordero v. Transamerica Annuity Serv. Corp.*, 211 N.E.3d 663, 670 (N.Y. 2023); *accord Spinelli*, 903 F.3d at 205. "No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship." *Cordero*, 211 N.E.3d at 670. Although New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled," implied covenant claims are permissible as alternative pleading when "there is a dispute over the meaning of the contract's express terms." *Spinelli*, 903 F.3d at 206; *accord Vitamin Realty Assocs. LLC v. Time Rec. Storage, LLC*, 148 N.Y.S.3d 8, 10 (1st Dep't 2021).

Here, the parties dispute whether JPMS affirmatively promised to secure an interest rate varying with market conditions for all Plaintiffs, and/or to secure a reasonable rate of interest on swept cash for IRA customers. The Complaint alleges that the interest rates on swept cash were "arbitrarily or irrationally" low in contravention of Plaintiffs' reasonable understandings of the agreements. *Cordero*, 211 N.E.3d at 670. Accordingly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing survives as alternative pleading.

**B. Breach of Fiduciary Duty (Claim IV)**

The fourth cause of action, on behalf of Plaintiffs and the Class, asserts that Defendants breached fiduciary duties to Plaintiffs by (1) failing to pay Plaintiffs a reasonable rate of interest or a rate tied to market conditions; (2) failing to act in Plaintiffs' best interests and

18

(3) recommending the Cash Sweep Program to Plaintiffs.  Defendants' motion to dismiss this claim is granted.

### 1. JPMC Holding

As with the contract claims, the fiduciary duty claims against JPMC Holding fail because the Complaint does not allege a fiduciary or any other relationship with JPMC Holding, nor does it adequately allege that JPMC Holding may be held liable for JPMS's conduct.

### 2. JPMS

The fiduciary duty claim against JPMS is also dismissed because the Complaint does not sufficiently allege that JPMS owes any duty to Plaintiffs with respect to the Cash Sweep Program other than nondiscretionary brokers' standard obligations to execute trades on behalf of customers.

Under New York law, when a parties' relationship is governed by a contract, "courts look to that agreement to discover the nexus of [the parties'] relationship and the particular contractual expression establishing the parties' interdependency."  *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005); *De Leon v. DraftKings, Inc.*, No. 25 Civ. 644, 2025 WL 3551627, at *10 (S.D.N.Y. Dec. 11, 2025) (New York law).  Brokers do not owe general fiduciary duties to nondiscretionary clients.  *Innovative Sec. Ltd. v. OBEX Sec. LLC*, 222 N.Y.S.3d 5, 7 (1st Dep't 2024); *see de Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1302 (2d Cir. 2002) (New York law).  "Ultimately, the dispositive issue of fiduciary-like duty . . . is determined not by the nomenclature . . . 'broker' or even 'agent,' but instead by the services agreed to under the contract between the parties."  *Ne. Gen. Corp. v. Wellington Advert., Inc.*, 624 N.E.2d 129, 132 (N.Y. 1993).

The Complaint does not adequately allege that JPMS has breached any duty it owes to Plaintiffs with respect to the Cash Sweep Program.  Plaintiffs' arguments in support of the claim are unavailing.

19

First, Plaintiffs argue that JPMS owes fiduciary duties because it agreed to act as an agent with respect to Plaintiffs' swept cash.  Specifically, Plaintiffs argue that the Deposit Account Agreement states that JPMS "acts as exclusive custodian and agent with respect to all transactions relating to the Deposit Account feature," and under New York law, an agent is a fiduciary.  This argument fails because, to the extent a fiduciary relationship applies to a broker acting as a customers' agent, the fiduciary obligations are limited to the scope of the transactions at issue.  *See de Kwiatkowski*, 306 F.3d at 1302 ("The broker's duties ordinarily end after each transaction is done, and thus do not include a duty to offer unsolicited information, advice, or warnings concerning the customer's investments.").  JPMS satisfied any limited fiduciary obligation by transferring uninvested cash to a JPMorgan Chase Bank account and withdrawing that cash upon Plaintiffs' instructions.  *See Liberty Cap. Grp.*, 802 F. Supp. 3d at 717 (holding no fiduciary duty owed to non-advisory customers under New York law when financial institution "open[ed] . . . accounts at deposit banks, swe[pt] cash from brokerage accounts and deposit[ed] it with the deposit banks, and withdr[ew] cash from deposit bank accounts and return[ed] it to brokerage accounts"); *In re Wells Fargo Cash Sweep Litig.*, 2025 WL 1785315, at *3 (concluding there was no fiduciary duty under New York law when complaint did not allege the defendant "had any discretionary authority to move cash in and out" of deposit account).

Second, Plaintiffs argue that JPMS undertook fiduciary obligations as to Plaintiffs' swept cash because JPMS exercised "de facto control and discretion" over Plaintiffs' cash sweep accounts.  This argument is similarly unpersuasive because the Complaint does not allege that JPMS had any discretionary authority to move Plaintiffs' cash in or out of cash sweep accounts.  *de Kwiatkowski*, 306 F.3d at 1302; *Liberty Cap. Grp.*, 802 F. Supp. 3d at 716; *In re Wells Fargo Cash Sweep Litig.*, 2025 WL 1785315, at *3.

Third, Plaintiffs argue that JPMS made various representations to Plaintiffs that JPMS owes Plaintiffs a fiduciary duty when making investment recommendations, and that JPMS

20

breached this duty by recommending the Cash Sweep Program.  These representations include that "[w]hen [JPMS] provide[s] you with a recommendation as your broker-dealer or act[s] as your investment adviser, we must act in your best interest and not put our interest ahead of yours"  and that "[w]hen acting in a brokerage capacity for certain clients, JPMS will make investment recommendations that are in your best interest."

This argument is unavailing because the Complaint does not adequately allege that Defendants recommended the Cash Sweep Program to Plaintiffs.  Instead, the relevant account agreements automatically enrolled Plaintiffs in the Cash Sweep Program, which held Plaintiffs' cash to the extent that Plaintiffs themselves opted not to invest any cash in their accounts.  That automatic enrollment is not a recommendation.  *See DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ. 318, 2009 WL 2242605, at *31 (S.D.N.Y. July 27, 2009) (holding no fiduciary duty under New York law when "balances existed in Plaintiffs' brokerage accounts because Plaintiffs chose not to invest these funds and instead left them idle in their accounts"); *see also Liberty Cap. Grp.*, 802 F. Supp. 3d at 716 (holding no fiduciary duty under New York law as to non-advisory services customers); *In re Wells Fargo Cash Sweep Litig.*, 2025 WL 1785315, at *3 (same). Plaintiffs' references to regulatory guidance applicable to broker-dealer recommendations are similarly unpersuasive because Plaintiffs have not alleged that Defendants made any recommendation.

The breach of fiduciary duty cause of action is dismissed.

### C.  Unjust Enrichment (Claim V)

The fifth cause of action, for unjust enrichment against JPMS, is dismissed because an express contract governs the subject matter.  *See EBC I*, 832 N.E.2d at 33-34 ("[T]he existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter.").  Plaintiffs contend that unjust enrichment may be allowed as alternative pleading when there "there is a dispute over the existence, scope, or

21

enforceability of the putative contract," but the cases Plaintiffs cite demonstrate that a dispute over the contract's terms does not support an unjust enrichment claim. *See Hofmann v. Long Island Univ.*, No. 22-393, 2024 WL 3262819, at *1 (2d Cir. July 2, 2024) (summary order) (dismissing unjust enrichment claim under New York law when "there is no dispute that an implied contract existed"); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (dismissing unjust enrichment claim under New York law when "valid and enforceable" agreement "governed the particular subject matter of this case"). Here, the parties' written agreements govern Defendants' obligations with respect to Plaintiffs' swept cash. Plaintiffs' claim for unjust enrichment against JPMS is dismissed.

The unjust enrichment claim against JPMC Holding is dismissed because the Complaint does not adequately allege the elements of the claim. To state a claim for unjust enrichment, a plaintiff must allege "that (1) the other party was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). Privity is not required, although a plaintiff must "assert a connection between the parties that is not too attenuated." *Philips Int'l Invs., LLC v. Pektor*, 982 N.Y.S.2d 98, 102 (1st Dep't 2014).

Here, the Complaint does not allege facts sufficient to show that JPMC Holding was enriched by the alleged misconduct of JPMS, or that it is "against equity and good conscience" for JPMC Holding to retain any indirect benefit it may have received through interest earned by JPMS or JPMorgan Chase Bank. The claim for unjust enrichment is dismissed.

## IV.    CONCLUSION

Defendant's motion is **GRANTED** in part and otherwise **DENIED**. All claims against JPMC Holding are dismissed. Claims I and II against JPMS, for breach of contract, are dismissed to the extent that they allege a breach of contractual language that JPMS will act in

22

Plaintiffs' best interest.  Claims IV and V against JPMS, for breach of fiduciary duty and unjust enrichment, respectively, are dismissed in full.

For clarity, the following claims survive:

- Claim I (breach of Deposit Account Agreement provision providing that interest rates will vary for all Plaintiffs) against JPMS;

- Claim II (breach of "reasonable rate" provision of IRA Agreements) against JPMS and

- Claim III (breach of implied covenant) against JPMS.

By **February 26, 2026**, Defendant JPMS shall file an Answer to the Complaint.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 84.

Dated: February 12, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE